# Cobb *versus* Bennett.

1. A vessel ran into- a net laid in a private fishery in a navigable stream and damaged it.    *Held*, that the captain was liable, if upon being warned he could have changed his course without prejudice to the reasonable prosecution of his voyage.

2. What would be a reasonable prosecution of a voyage depended upon the attendant circumstances.

3. A vessel may hold her course in a navigable stream without regard to a fisherman's net, if the master act without wantonness or malice and do no unnecessary damage.

4. Fishery is an acknowledged right, but is subordinate to the rights of navigation.

5. Wantonness is reckless sport, wilfully unrestrained action, running immoderately into excess.

6. Tinicum Fishing Co. *v.* Carter, 11 P. F. Smith 21, referred to on the law of fisheries.

February 18th 1874.    Before AGNEW, C. J., WILLIAMS, MERCUR and GORDON, JJ.    SHARSWOOD, J., at Nisi Prius.

[Cobb v. Bennett.]

Error to the District Court of *Philadelphia*: No. 52, to July Term 1872.

This was an action of trespass *vi et armis* brought June 20th 1870, by David Bennett against David Cobb, master and agent for the owners of the schooner "Sarah."

The cause of action was that the defendant wantonly ran his vessel into the fishing-net of the plaintiff and greatly injured it.

The case was tried February 8th 1872, before Lynd, J.

The plaintiff testified that he was the lessee of a fishery on the New Jersey side of the river Delaware and duly licensed. He further testified that on the 17th of May 1870, he had his nets laid out about 3½ o'clock A. M., with a boat with a light in it, lying about 200 feet from low water mark ; he had about thirty or thirty-five men employed. About that time the "Sarah" was seen approaching and when about 400 or 500 yards below the nets, his son rowed towards the vessel in which there was a light, he heard his son hail the vessel to go to the westward, plaintiff rowed down to the vessel and told the captain of the vessel, that if he would "go about" he would clear the nets; he did not go about, "he continued his course until he struck my net; he damaged my net, tore my lines; he let go his anchor inside the net on the fishing grounds ; * * * he lay the first time at anchor half an hour * * * I told him to stand over towards Tinicum Island; he did so and then went about, came back and anchored on our grounds, * * * he remained four hours at anchor the second time."

The plaintiff then testified as to the damage which he had sustained by reason of the vessel injuring his net. He also testified that the defendant without injury to himself might have avoided running into the net, if he had changed the course of his vessel after he had been notified.

T. Bennett testified that when he saw the vessel approaching at the distance of 400 yards, he rowed out to her and asked the captain to keep to the westward of the light, which the witness pointed to him; he refused in offensive language and kept his course inside of the light.

There was other evidence of the same general character in support of the plaintiff's case.

The court charged :—

"In the present action, damages are claimed by the plaintiff on two grounds :—

"1. For running into plaintiff's net wantonly and maliciously.

"2. For anchoring maliciously on plaintiff's fishery.

"A riparian owner has a right at common law, independently of any statute, to throw his nets out in front of his shore, and cannot wantonly be interfered with by any one.

"But there is another right in the river—that of navigation—

[Cobb *v.* Bennett.]

which is superior to the right of fishery; and when they interfere, that of fishing must give way to the right of navigation.

" Where a person, in the exercise of his rights of fishing, has his nets cast out, and a vessel cannot proceed on her voyage without coming in contact with the nets, and the owner of the nets receives damages thereby, he cannot recover.

" [But if a navigator, having notice of these nets, can, with regard to a reasonable pursuit of his voyage, avoid them, and if, indifferent to the rights of the fishery, he runs into the nets or anchors on the fishing grounds, he must pay for the damage he does.] [Those exercising the rights of navigation will not be excused if they are sufficiently warned, unless they make a reasonable effort to avoid them.] [If the defendant's vessel could, with such reasonable effort, have avoided the nets, even if it required him to shorten the tack his vessel was holding, the defendant was bound to do so. I charge that, as a question of law, he was bound to shorten his tack, if he could thereby have avoided the nets], without prejudice to the reasonable prosecution of his voyage.

" Now, on the question of malice. [It does not require evil intent against or knowledge of the person injured to imply it. Recklessness in running into the net will render the defendant liable for maliciously injuring it.] [There is evidence from which the jury can find malice."] * * *

The verdict was for the plaintiff for $360.88.

The defendant took out a writ of error, and assigned for error—

1–5. The parts of the charge in brackets.

6. Because the court did not charge that a vessel is not liable for injuries from negligence to fisheries in navigable streams, unless done with malice.

*J. V. Darling* and *M. P. Henry*, for plaintiff in error.—Private fisheries in navigable streams are, as to navigation, nuisances; no duty is imposed upon navigators to avoid them. The limit of their duty is that they do not *maliciously* injure them. Malice is not to be inferred from a course of navigation in itself proper, because the fishery might have been avoided by another course: Lewis *v.* Keeling, 1 Jones (N. C.) R. 299; Post *v.* Munn, 1 South. (N. J.) 61; Colchester *v.* Brooke, 7 Q. B. 339; Carson *v.* Blazer, 2 Binn. 475; Shrunk *v.* Schuylkill Nav. Co., 14 S. & R. 71.

*J. W. Coulston*, for defendant in error.

The opinion of the court was delivered, February 24th 1874, by AGNEW, C. J.—We discover no error in the portions of the charge assigned for error. They may all be comprised in the

[Cobb v. Bennett.]

following instruction: "I charge as a question of law he (the defendant) was bound to shorten his tack, if he could have thereby avoided the nets, without prejudice to the reasonable prosecution of his voyage." This was said in view of the facts in evidence on the part of the plaintiff, that the defendant was notified of the position of the net of the plaintiff; pointed to the light which marked that position; and requested to change his course so as not to foul it, and that this could be done conveniently. The judge had already said: "But there is another right in the river, that of navigation, which is superior to the right of fishing, and when they interfere, that of fishing must give way to the right of navigation." He had also said: "Those exercising the rights of navigation will not be excused, if they are sufficiently warned, unless they make a reasonable effort to avoid them." Now, surely, it is not error to say, that when the mariner is warned of his approach toward the net of the fisherman, he should change the course of his vessel, *if he can do so without prejudice to the reasonable prosecution of his voyage.* The entire point of the charge is contained in this qualification, and hence it was not doing full justice to the charge to omit the qualifying words in the assignment. What would be a reasonable prosecution of the voyage would depend on the attendant circumstances, and upon this a special instruction might have been called for. Without the qualification there would have been error, for we must agree that the mariner is not bound to shorten his tack, merely because a net is stretched across his course. A vessel is entitled to take her course in the navigation of the river, and to hold it without regard to the fisherman's net, provided the master act without wantonness or malice, and do no unnecessary damage. This is an obvious consequence of the superior right of navigation. But this, we think, was the very doctrine of the charge, and the exception contained in the qualification in view of the facts in evidence. If the mariner, warned of the position of the net and requested to change his tack, may do so "without prejudice to the reasonable prosecution of his voyage," can we say he is exercising his superior right of navigation justly, and in the spirit of the maxim, *sic utere tuo ut alienum non lœda*s, if, indifferent to the inferior right, he recklessly holds on his way and fouls and injures the fisherman's net? Certainly we cannot say this, for in effect it would be to say a fisherman has no rights whatever; that being no right which another may disregard under all circumstances. In view of the legislation, both of Pennsylvania and New Jersey, the usages of fishing, and the decisions in our own state, there is a right of fishing in the Delaware, though subordinate to the right of navigation, which cannot be unnecessarily impeded by it. Fisheries attached to the riparian ownership are valuable, and command high rents. This

[Cobb *v.* Bennett.]

subject will be found to be discussed at great length and with much research, by our brother Sharswood, in the case of The Tinicum Fishing Co. *v.* Carter, 11 P. F. Smith 21.   It therefore needs no further discussion here.   The right of fishery is an acknowledged one, though it is entirely subordinate to those of navigation, and we intend in this opinion to lay down no principles which would burden commerce or restrict the navigator's rights, beyond that which his evident duty to others would justly require.   Indeed, the question upon the charge comes down to this.   Is it *wantonness* when a mariner warned of the net, seeing the light marking its position, and requested to avoid it, yet indifferent to the interests of the fisherman, keeps on his course, when a reasonable pursuit of his voyage would not be prejudiced by avoiding the net?   Wantonness is reckless sport, wilfully unrestrained action, running immoderately into excess.   If a man will do an injury, when he may reasonably avoid doing so, without inconvenience to himself, can it be said he is blameless?   Is it not worse than wantonness, is it not rather malice, when he may, without prejudice to the reasonable enjoyment of his own right, desist from an injury to another, and yet will persist in committing it?   Now, unless we deny this proposition we cannot reverse.   If there were anything exceptional in the facts or contradictions in the evidence, it was in the power of the defendant to ask specific instructions upon the precise state of the facts as appearing on either side.   If, by reason of the veering of the wind to the north-east, the running of the tide with the course of the vessel, the want of men on deck at the moment, or other sufficient cause, it would have been difficult, or even unreasonably inconvenient, to shorten the tack of the vessel, or change its course, the instruction might have been asked that in such a case the master was not bound to luff or to shorten tack.   We agree with the counsel of the plaintiff in error, that the interests of navigation are all-important to a port like that of Philadelphia, and are not required to give way to the minor and subordinate right of fishing.   But in the absence of a call for instruction on the point so much insisted upon in the argument, we cannot say the court erred in the general instructions contained in the charge.   There was evidence of malice sufficient to take the case to the jury, to whom it belonged, and not to the court, to say whether the language used, "to hell with your net," was a mere superfluity of maritime civility, or was indicative of malice.

Judgment affirmed.