# Martin Gallagher *v.* The City of Philadelphia, Appellant.

*Waters and waterworks—Use of waters of Schuylkill river.*

The rights of the public for navigation are superior to those of the city of Philadelphia under the Act of 1807 and its contracts with the navigation company, except as respects the use of water for drinking and domestic uses.

*Waters of Schuylkill river—Damages—Province of court and jury.*

Where the uncontradicted evidence establishes the fact that the owner of a canal boat, navigating the Schuylkill Canal, has suffered delay by reason of the city of Philadelphia pumping water for other than drinking and domestic purposes, the jury was properly instructed that the plaintiff was entitled to recover for the actual, immediate and direct loss.

*Waters and waterworks—Depletion of Schuylkill river—Cause of action.*

The question in a suit against the city of Philadelphia for depleting the waters of the Schuylkill river is whether there was a substantial and injurious interference with ordinary and customary navigation produced by pumping water from the Fairmount pool, for other than drinking and domestic purposes. In seasons of drought the top level of the dam does not necessarily measure the height of water necessary for navigation.

*Depletion of Schuylkill—Special injury—Question for jury.*

Where the undisputed evidence discloses a special and particular injury to a person navigating the Schuylkill Canal it is not necessary to submit that question to the jury.

*Practice, C. P.—Trial—Answer to point—Charge of court.*

Where the instructions asked for in a particular point are substantially answered in the general charge, the assignment for error of the refusal of that point is untenable. A judge is not obliged to affirm correct legal propositions in the exact phrase asked for.

*Waters and waterworks—Manufacturing and domestic uses of water.*

Manufacturing uses of water do not become domestic uses because the product of the manufacturer is used for domestic purposes.

Argued, Oct. 13, 1896.   Appeal, No. 97, Nov. T., 1896, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1895, No. 176, on verdict for plaintiff.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, ORLADY and SMITH, JJ.   Affirmed.

Trespass for injuries resulting from the depletion of the waters of the Schuylkill and delaying plaintiff's canal boat. Before THAYER, P. J.

The facts sufficiently appear in the opinions of the Superior Court and the court below.

The defendant submitted the following points:

" 1. The jury must find for the defendant in this case." *Answer :* Refused. [2]

2. Unless the jury find that the plaintiff has suffered loss or damage differing in kind from that which other members of the navigating public in general, whose boats have been traveling or who may have desired to use their boats on the canal at the same periods when he was detained, suffered from the low condition of water in the Fairmount pool, they must find for the defendant.   *Answer :* Refused. [3]

3. It was the duty of the Philadelphia & Reading Railroad Company which exercised the franchise of the Schuylkill Navigation Company, not to detain water in the upper pools of its system to an extent inconsistent with the natural and reasonable flow of the stream.   If the jury find that the interruption to navigation was the result of an improper detention of the water, and would not have resulted at all if the company had permitted a proper flow down to Fairmount pool, the city should not be held liable for the detentions. *Answer :* Refused. [4]

4. Unless the jury find from the evidence that the quantity of water pumped by the city from the Fairmount pool for other uses than domestic uses occasioned the detentions complained of, they must find for the defendants.   *Answer :* Refused. [5]

5. Domestic uses are the necessary uses connected with the ordinary conduct of life in modern times.   Uses of this character are domestic uses even if they are conducted in a wholesale manner for the advantage of many inhabitants of the city. *Answer :* Refused. [6]

6. The jury must consider whether the city, by a greater use

of the water than it is entitled to make at times when such use might involve obstruction to navigation, diminished the volume of water in the channel below the level to which the navigating public were entitled. If the city did not draw down the water below the level established by the Navigation Company, but only drew off a part of the additional accumulation which the city itself occasioned by raising the dam to hold water for the supply of the inhabitants, no damages can be awarded. *Answer :* Refused. [7]

7. No allowance can be made because of the detention of other boats than plaintiff's, unless the testimony fairly traces such detentions as the cause of delay to plaintiff's boat. *Answer :* The detention of other boats has nothing whatever to do with the case, except in considering the question whether the detention of the other boats caused the plaintiff's detention, and whether the detention in both cases was caused by any unlawful use of the water made by the city. If the jury find a verdict for the plaintiff, the damages are, therefore, to be strictly confined to the losses directly suffered by the plaintiff in consequence of the act of the city. [8]

The charge of the court, by THAYER, P. J., was as follows :

This is a very small case when considered in respect to the amount in controversy, which is only about $100. The plaintiff's claim, I believe, is for the detention of his boat for eight days, which is made up of several items. He claims $8.00 a day for the detention of his boat, and $1.00 a day for feeding his mules, and $3.00 a day for the maintenance of three boatmen during these eight days of detention, which would amount altogether to $12.00 a day for eight days, which would make $96.00. That is about the extent of the plaintiff's claim, beyond which you would hardly go in allowing damages in this case. So that you see it is a very small case as regards the amount involved, but, in its principles, it is a great case, and one which has in former times engaged the attention and skill of some of the most able lawyers in this city. Two cases similar in all their essential features to this were tried and argued fully, about twenty-five years ago, in the district court of this city and determined there, and after being tried, argued and determined there, were both taken to the Supreme Court of Penn-

sylvania, and affirmed, the principles upon which this whole
controversy turns and upon which this case is now to be decided
being then solemnly and finally adjudicated by the Supreme
Court of Pennsylvania, and being then so clearly announced
that is impossible to mistake them; so that all we have to do in
this case is to take for our chart the decision of the Supreme
Court of Pennsylvania in those two cases, which, in all their
essential features, were exactly like this case, and apply the
principles of law which that court laid down to this case.    The
two cases to which I refer are Phila. v. Collins, 68 Pa. 106, and
Phila. v. Gilmartin, 71 Pa. 140.    Adjudications of the Supreme
Court are the law of the commonwealth, as much so as any act
of assembly.    There is no higher law in the commonwealth than
the adjudications of the court of last resort of this state.    Of
course, everybody is bound by them, and we are bound to apply
the law which was laid down by that court to all cases in which
the law so laid down is applicable.    That is our simple duty in
this case.    Therefore this renders it necessary for me to do little
in this case except to distinctly define to you what was decided
by the Supreme Court of Pennsylvania in this class of cases,
and to ask you to apply in good faith the law laid down by the
highest tribunal of the state to the facts which are before you
in the present case.

The decisions to which I have referred may be reduced to
three general propositions which were decided upon solemn
argument by the court.    The first is that the city of Philadel-
phia has the right by law and under the several acts of assem-
bly and agreements, which are in evidence in this case, to take
any amount of water from the river Schuylkill for drinking and
other domestic uses.    This use of water by the citizens for
domestic purposes cannot be restrained or impaired by legisla-
tion, by grant, or by actions for damages, for the right to this
use of the water is derived from the law of nature and founded
upon the law of paramount necessity.    That is the first propo-
sition determined by the Supreme Court, to wit, that the city
of Philadelphia can use the water of the Schuylkill river to any
extent for strictly domestic purposes without being answerable
to anybody for so doing.

[The distinction between manufacturing purposes and domes-
tic purposes is a very clear one indeed, and nothing can be

plainer than the fact that manufacturing uses do not become domestic uses because the product of the manufacture is used for domestic purposes. That is, a manufacturing use — for instance, the manufacture of beer—does not become a domestic use of the water because the beer when made is drunk by the citizens of Philadelphia. Such a use is a manufacturing use, and not a domestic use. A domestic use means that use of the water which is made by the citizens in the ordinary conduct and for the ordinary purposes of domestic life. Although the product of manufacturing establishments might be used for domestic purposes, they are, nevertheless, uses for manufacture and not uses for domestic purposes. I am bound to say, therefore, that I regard the argument made by the city's counsel upon that point as altogether fallacious and unsound.] [9]

The second proposition decided by the Supreme Court was this: Outside of the right of the city to use the water for drinking and domestic purposes, the rights of the public for navigation are superior to those of the city under the acts of assembly and her contracts with the Schuylkill Navigation Company. I will repeat: outside of and beyond this right of the city to use the water for drinking and domestic purposes, the rights of the public for the navigation of the stream are superior to those of the city under the acts of assembly and her contracts with the Schuylkill Navigation Company. That is to say, in other words, that the city has no right to destroy or impair the navigation by any use of the water which is not for drinking and domestic purposes, and if they do that, they are responsible to those whom they injure. That is the second point decided by the Supreme Court of Pennsylvania.

[The third proposition decided by the Supreme Court was this: The right of the city to draw water from the river for manufacturing purposes is subordinate to the right of navigation, that is, lower, and if by such use of the water she reduces the volume of the stream to such an extent as to obstruct and delay or stop the navigation of the river by boats of the usual draught which have been accustomed to navigate the stream, the city is responsible in damages to the extent of the actual, immediate, and direct loss suffered in consequence, by the owners of boats who have been injured in this manner by the act of the city.] [10]

These three propositions of law, which I have taken some pains to impress upon you as clearly as I can, which were determined by the Supreme Court of Pennsylvania in the two cases to which I have referred, contain all the rules of law which are necessary for the proper determination of this case. It is altogether unnecessary, therefore, for me to make any further answer to the points presented by the ingenious counsel for the defendant, for the whole law upon the subject applicable to the case is contained in these clear propositions of law laid down by the Supreme Court.

I decline, therefore, to add anything further to these instructions, except to say in answer to the defendant's seventh point, that the detention of other boats has nothing whatever to do with the case, except in considering the question whether the detention of the other boats caused the plaintiff's detention, and whether the detention in both cases was caused by any unlawful use of the water made by the city. If the jury find a verdict for the plaintiff, the damages are, therefore, to be strictly confined to the losses directly suffered by the plaintiff in consequence of the act of the city.

The plaintiff's counsel now states that his claim is for twelve days' detention instead of eight. If there were really twelve days' detention, and you should find a verdict for the plaintiff, of course you would allow for the twelve days. You will say how the fact is upon the evidence.

Verdict and judgment for plaintiff for $72.00. Defendant appealed.

*Errors assigned* were (1) in overruling defendant's offer to prove " that no time when the depletion affected navigation by Martin Gallagher, or his boat, had the city drawn the water down to a level as low as that established by the navigation company, that is, the greatest height to which the navigation company raised the dam," for which refusal he granted an exception; (2–8) refusal of defendant's points, reciting same; (9–10) portions of the general charge, reciting same.

*E. Spencer Miller*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellant.—The appellant depends upon the firm principle that no private action lies for a public

nuisance, unless a special damage is done: Stetson v. Faxson, 19 Pick. 147.    See also Gold v. Phila., 115 Pa. 185; Megargee v. Phila., 153 Pa. 340.

Analogous questions have been decided by the Supreme Court in the cases of Lawrence v. Philadelphia, 154 Pa. 20; Dooner v. Pa. R. R. Co., 142 Pa. 36; Jones v. R. R., 151 Pa. 30; Hobson v. Phila., 155 Pa. 131.

*R. Stuart Smith,* for appellee.—All the questions raised by the assignments of error in this case have been twice decided by the Supreme Court in two cases which are identical with this case in all their essential features: Phila. v. Collins, 68 Pa. 106; Phila. v. Gilmartin, 71 Pa. 140.

OPINION BY WICKHAM, J., March 17, 1897:

The plaintiff was the lessee and master of a canal boat plying upon the artificial navigation system of the Schuylkill river, between Port Clinton and tide water wharfs, below this system, in Philadelphia.    During the summer and fall of the year 1895, the plaintiff's loaded boat was several times detained on her downward trips, at different points above the last dam in the Schuylkill, by reason of low water; and, as he avers, also lost time in unloading, at the wharfs above mentioned, because other boats, which had likewise been detained above by lack of sufficient water, arrived there late before him.

At the trial the plaintiff through his testimony, fixed the whole number of days' detention at nine, five whereof covered the time alleged to have been lost at the consignment wharfs, and he claimed damages on the basis of $8.00 per day.    He received a verdict for the full amount of his claim, viz, $72.00.

The cause of all the detentions, as averred by the plaintiff and found by the jury, was the pumping of water from the Schuylkill, by the city of Philadelphia, for other than drinking and domestic uses, to such an extent as to prevent navigation. The uncontradicted evidence clearly established the fact, that if the city had drawn water from the stream for drinking and domestic uses only, navigation would not have been impeded in the least.

The able and learned trial judge instructed the jury, in effect, that the city could lawfully take any quantity of water from

the stream, necessary for drinking and other domestic uses;
that the right to take water for other purposes, including manu-
facturing, was subordinate to the right of those navigating the
stream by boats of the usual draught, and that if the plaintiff
had suffered delay through the action of the city in pumping
water for other than drinking and domestic purposes, he was
entitled to recover for the actual, immediate and direct loss thus
caused to him.   These instructions were so fully in accordance
with the decisions in Philadelphia v. Collins, 68 Pa. 106, and
Philadelphia v. Gilmartin, 71 Pa. 140, that it would be a waste
of time and words to engage in their vindication here.

The refusal of the offer quoted in the defendant's first assign-
ment of error, was entirely proper, and is sustained by the rea-
soning of Mr. Justice AGNEW in the concluding paragraphs of
his opinion in Philadelphia v. Gilmartin.   The plaintiff's boat
drew several inches less than the standard draught fixed as far
back as the year 1846, and less than the draught established
later, by experience and usage, for low water navigation.   The
question, therefore, was not whether the water was lowered by
the city to the top of the dam, but whether there was a substan-
tial and injurious interference with ordinary and customary
navigation produced by pumping water from the Fairmount
pool, for other than drinking and domestic uses.

The third assignment of error complains that the court did
not leave it to the jury to determine whether the plaintiff suf-
fered special injury, differing in kind from that inflicted on the
general public engaged in navigating the river.   The undisputed
evidence showed a special and particular injury: Philadelphia
v. Collins, supra; Knowles v. Pennsylvania R. R. Co., 175 Pa.
623.   It was not necessary, therefore, to submit the question to
the jury.

The refusal of the defendant's third point, which is the sub-
ject of the fourth assignment of error, was likewise proper.
There was no evidence that "the interruption to navigation
was the result of an improper detention of the water," in the
upper pools by the Philadelphia & Reading Railroad Company,
exercising the franchise of the Schuykill Navigation Company.
On the contrary, it clearly appears, that the officers in charge
of the navigation system, exercised a high decree of care, skill
and prudence in its management, and used the water, at their

command, judiciously, in order to maintain navigation, as far as possible, from one end of the system to the other. It is also apparent that their efforts would have been successful, had the city, during the period of drought, not drawn water from the Fairmount pool to an extent inconsistent with its rights. But, were the facts otherwise, the company and the city would be joint tort-feasors, and the default or wrong-doing of one would not enable the other to escape its liability to parties navigating the stream, as is pointed out in Philadelphia v. Collins, supra.

The instruction asked for in defendant's fourth point was substantially given in the general charge, hence the fifth assignment of error is untenable: Kroegher v. The McConway & Torley Co., 149 Pa. 444.

The defendant's fifth point, the refusal whereof is the basis of the sixth assignment of error, was properly answered. As the learned trial judge well said: "The distinction between manufacturing purposes and domestic purposes is a very clear one indeed, and nothing can be plainer than the fact that manufacturing uses do not become domestic uses, because the product of the manufacture is used for domestic purposes." But, even if the law were as contended for in this point, the latter should still have been refused, there being no evidence from which the jury could approximately estimate how much of the water employed for manufacturing was used in producing articles used or intended to be used for domestic purposes. The views here expressed are also fully applicable to the ninth assignment of error.

The seventh assignment is sufficiently disposed of by what is said concerning the first. It may be added, however, that the raising of the dam, therein mentioned, was done conjointly by the city and the navigation company, the latter never in any manner relinquishing its rights and control. It must also be borne in mind, that the public, navigating the Schuylkill, have rights which neither the company nor the city can abridge or take away.

The defendant's seventh point was not refused, as is alleged in the eighth assignment of error. The answer to the point was an affirmance thereof and could not have been understood in any other sense by the jury. A judge is not bound "to affirm correct legal propositions in the exact phrase asked for:" Kroe-

gher v. The McConway & Torley Co., supra; Commonwealth v. McManus, 143 Pa. 64.

The tenth and last assignment is overruled for reasons already given or suggested.

We need not dwell on the attempt made by the defendant's counsel, in their printed argument, to convict the court below of error in not excluding, from the consideration of the jury, the plaintiff's claim for damages caused by the delay at the consignment wharfs. No assignment of error bears on this matter, and moreover the defendant's seventh point, asked that it should be submitted to the jury. It is now too late to complain that the loss resulting from such delay was not sufficiently proximate to be considered. An examination of the charge shows too, that in a general way the rule as to the measure of damages was correctly stated.

On the whole we are satisfied that nothing is presented by the assignments of error to justify reversal.

Judgment affirmed.