# Hunt v. Graham.

*Waters and water rights—Right to take sand out of river—Bathing.*

The highest right in a navigable stream is that in the interest of commercial traffic, and the public has the right to gather stones, gravel and sand out of the beds of our public rivers, or to take fish, ice or driftwood there and under certain defined limitations to bathe therein.

*Province of court and jury—Negligence—Drowning in hole excavated in public river.*

Persons engaged in the lawful business of excavating sand from the bottom of a public stream are not bound in the exercise of ordinary care to anticipate and provide against the act of a boy of fifteen, who, knowing he could not swim, and that holes made by defendants' dredge were in the near neighborhood, walks over a river bottom, which he could not see, and into a hole made by defendant. The boy was guilty of contributory negligence, and the defendants were guilty of no negligence in leaving the hole unmarked. The issue is to be determined as a question of law.

*Infant—Presumption of sensibility of danger.*

It is legally to be presumed that a boy fifteen and one half years of age is of sufficient capacity to be sensible of danger and to have the power to avoid it.

*Bathing in public river—When and where prohibited.*

The right to bathe in a public stream is not an absolute right. It is qualified by as fixed rules as those which determine the privilege. It is permitted only at certain places, and is of the same character as the right to use or to take water from the stream.

A person has no legal right to enter a river for bathing in a place 200 feet distant from a public crossing, between a populous city on one side and an active borough on the other; at common law, as well as by statute, his act of bathing at such place is prohibited.

Argued April 30, 1900. Appeal, No. 162, April T., 1900, by defendants, in suit of Julius Hunt against W. R. Graham et al., trading as the Sharpsburg Sand Company, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1898, No. 519, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by ORLADY, J. RICE, P. J., dissents.

Trespass. Before SLAGLE, J.

It appears from the record that this was an action brought by a father to recover damages for his loss by reason of the death of his son, fifteen years and five months old, and alleged to have been caused by the negligence of defendant. The boy was drowned whilst bathing in the Allegheny river, and it was alleged that he drowned in a sand hole made by the defendants' sand boat some time previous in excavating for sand in the river in front of the borough of Aspinwall.

Defendants submitted the following points:

[1. Under the pleadings and evidence in this case, the verdict should be for the defendants. *Answer:* Refused.] [1]

[2. The right to dig and remove sand and gravel and materials from the bed of a navigable stream is paramount to the right to bathe in such stream, and is invested with a higher degree of importance for the purposes of trade; and the right of individuals to bathe in such stream is of trifling importance compared with the right to dig and remove sand and gravel and other materials. *Answer:* Refused.] [2]

Verdict and judgment for plaintiff for $400. Defendants appealed.

*Errors assigned* were (1, 2) refusal of defendants' points, reciting points and answers.

*W. B. Rodgers,* with him *W. L. Burd,* for appellants.—The defendants were engaged in a lawful business and one that is valuable to the community. In removing the sand they were

not trespassers, but doing what the state allowed them to do. Their act was one which improved the river as a navigable stream. It is entirely impracticable, as well as unheard of, to mark the places where sand is taken out. A system of buoys, if adopted, would be obstructions to navigation, and could not be fastened to anything solid at the bottom of the stream. Filling up the space is equally impracticable; earth filling would speedily be dissipated, and rock would be injurious to the bed of the river, and either or any filling would be a nuisance.

So the plaintiff's position would be a complete denial of the right to remove sand and gravel, and would deprive warrantees of the rights given them by the state to mine for minerals in the beds of streams.

The true principle, I submit, is this: The right to remove sand and gravel from the beds of rivers is useful for navigation, as it deepens the channels; it is a valuable right on account of the commercial importance of the sand and gravel; the right to bathe in thickly settled communities, as this is, is seldom used and is against public morals and common decency; and that he who enters the river to walk on or over its bed is presumed to know of the exercise of the right to remove sand and gravel and take the risks. He undoubtedly knows he is not walking on a smooth and uniform surface, but upon a surface which is constantly changing by action of water and ice. It may be that the rule is different at known bathing places, but then the liability, if any, would be as for creating a pitfall, and there would be an element of recklessness or malice in the case.

The deceased was guilty of contributory negligence and the court should have said so, as a matter of law.

Even if this was the case of the use of an ordinary highway, there was evidence of contributory negligence. But we all know that the beds of rivers present inequalities, caused by the current, ice and other natural causes. He who permits himself to walk on the bed of a river takes these risks. He knows the bed of the river is not a paved highway for travel. Either man or boy who walks there and is unable to swim is in a place of manifest danger.

*Samuel B. Griffith,* for appellee.—The question of defendants'

negligence and plaintiff's contributory negligence in this case were questions of fact for the consideration of the jury under proper instructions.

How loath the Supreme Court of Pennsylvania have been to interfere with this province of the jury will be shown by an examination of the following cases: Hanover R. R. Co. v. Coyle, 55 Pa. 396; Penna. R. Co. v. Goodman, 62 Pa. 329; Penna. R. Co. v. Weber, 76 Pa. 157; Schum v. Penna. R. Co., 107 Pa. 8.

OPINION BY, ORLADY, J., July 26, 1900:

This suit was brought to recover damages for the death of the plaintiff's son, which was alleged to have been caused by the defendants making and leaving a hole in the bottom of the Allegheny river. The defendants were sand diggers and conducted their business by means of a steam elevator dredge, which was so arranged that scoops or buckets were lowered through the water to the river bottom, and by gravity or artificial force were driven into and gathered the sand and gravel, which was then hoisted and screened, the sand being deposited in a scow or barge for trade purposes and the larger stones and gravel falling back into the river at the side of the dredge. On July 23, 1899, at about 5 o'clock in the afternoon, the plaintiff's son, aged fifteen and a half years, and accompanied by another boy of about the same age, went into the Allegheny river between the city of Pittsburg and the borough of Aspinwall for the purpose of washing and bathing; after removing his shoes, he waded out to a gravel bank about four feet from the shore, where he took off his clothing and entered the river. Having waded about for a short time in water which reached to his arm pits, he was seen by his companion to be in a drowning condition at a point about ten feet below the gravel pile and about twenty to twenty-five feet from the bank. His body was recovered the following day near to the place where he sank, and in a sand hole which had been made on April 27 previous, by a steam dredge which was owned by the defendants. The boy had been bathing in the river at the same place on the Thursday before, and when he entered the river on July 23, his attention was called to the many sand holes forty or fifty feet up the stream, which had been made by the sand dredges. The usual

depth of water in that immediate vicinity was four or five feet, and there was no evidence that either of the boys knew of the existence of the particular hole in which his body was found. The evidence that the defendants made this sand hole, or that it was the proximate cause of the boy's death, is very meager and not at all convincing, but for the purpose of this case we assume it to be sufficient.

Were the defendants guilty of negligence in excavating sand from the river bed at this place and leaving the hole unmarked and unprotected? It is not pretended that the acts of the defendants in removing the sand were in any sense unlawful. They were not trespassers and the evidence shows that their operations were recognized as an important business industry, which gave employment to about twelve steam dredges in the two rivers. The work did not interfere with navigation but, if properly conducted, was an aid to it, and did not in any way affect the volume or purity of the water in its natural flow. The sand secured was used in various trades, in furnaces, in building operations, and in the construction of concrete streets and pavements. It was clearly shown that it was not possible or practicable to fill up the holes made in removing the sand, nor was it feasible to locate the sand holes by floats or signals.

The plaintiff urges that as the Allegheny river is a navigable stream, all of the people have a right to bathe therein, and that the legal duty to the public was violated in not filling or marking the holes made in the river bottom. The highest right in a navigable stream is that in the interest of commercial traffic on its waters; this right is superior to the right of fishing (Flanagan v. Philadelphia, 42 Pa. 219; Cobb v. Bennett, 75 Pa. 326); to the enjoyment of property in an oyster bed; to ferry privileges; to the right to lay pipes in the stream, and to use and maintain bridges, though in some places it has been held to be coextensive with the latter (16 Am. & Eng. Ency. of Law, 260, notes); and to the right to take water from the stream for manufacturing purposes: Philadelphia v. Gilmartin, 71 Pa. 140; Gallagher v. Philadelphia, 4 Pa. Superior Ct. 60. It has been held in a number of cases in this state that the right to use the water in the public streams is one that belongs to the public at large; the soil and the water found between the lines that describe low water mark being maintained as

eminent domain for the use of all citizens (Flanagan 'v. Phila-delphia, 42 Pa. 219) ; and that the public has the right to gather stones, gravel and sand out of the beds of our public rivers, or to take fish, or ice, or driftwood there, or to bathe therein, or to hunt game, or pasture cattle, or gather fallen wood, or make maple syrup in our public woods. The state allows all this, and never claims as her property such private products of her public lands : Solliday v. Johnson, 38 Pa. 380. It is unquestioned that the waters of our public streams are public property, and that their use by a riparian landowner is subject to the public right. He may use it for drink and for ordinary uses of domes-tic life : Philadelphia v. Collins, 68 Pa. 106, 116. Except at public crossings, such as a road or a street, no one but a riparian landowner can use the water, not because the latter has any ownership in it, but because the stranger has no right of access to it. There can be no such thing as ownership in flowing water ; the riparian owner may use it as it flows ; he may dip it up and become the owner by confining it in barrels or tanks, but as long as it flows it is as free as light and air. It follows that dwellers in towns and villages watered by a stream may use the water as well as the riparian owner, provided that they have access to the stream by means of a public highway : Haupt's Appeal, 125 Pa. 211; Penna. R. Co. v. Miller, 112 Pa. 34; Rudolph v. Penna. R. Co., 186 Pa. 541.

The right to bathe in a public stream is not an absolute right. It is qualified by as fixed rules as those which determine the privilege. It is permitted only at certain places, and is of the same character as the right to use or to take water from the stream. Even at common law, bathing in the sea near inhabited houses was prohibited (Rex v. Crunden, 2 Camp. 89) near a public footway: Reg. v. Reed, 12 Cox C. C. 1; Whar-ton, Criminal Law, sec. 1470. The same rule would apply to a place as public as that described in this case, between the city of Pittsburg and the borough of Aspinwall. The right of the plaintiff's son to bathe in the public river was subject to the rights of the public, and to the duties which he owed to that public. Had the hole in which the young man was drowned been made in clearing the channel of the river for the purposes of navigation it would hardly be contended that there could be a recovery ; nor would it be if he had become fastened

in appliances which had been lost in the river bed, or on piling which had been put in or abandoned in the prosecution of such work. If the dredge itself had sunk and submerged on April 27, and his death could be directly traced to its presence in the river bed, there could not be a recovery against the owner. In Winpenny v. Philadelphia, 65 Pa. 135, the cause of action was the negligence of the city of Philadelphia in permitting the navigation of the river Schuylkill to be obstructed by a sunken barge, against which the plaintiff's tugboat struck and was injured. A nonsuit was entered by the district court, and on appeal the Supreme Court reversed the judgment for the reason that by the consolidation Act of February 2, 1854, P. L. 21, it was made the duty of the city councils " to keep the navigable waters within the said city forever open and free from obstruction." However on the question of general liability the court said : "It is well settled that the owner of a vessel which has been sunk in navigable waters, and abandoned by him, is under no obligation to remove the vessel, and is not liable for the injuries it may cause other navigators. . . . That the absence of this liability on the part of the owner is commonly understood by the people of this state is evident from the fact that her large rivers are often strewn with the wrecks of vessels, bridges and buildings carried down by the floods and lodging among the rocks, in the sand, and along the shore, and yet no one thinks of a suit or indictment against the owner for not removing them. I can see no difference between the wrecks of vessels and the ruins of mills, bridges and houses swept off by a freshet and lodged in the waters below; yet no indictment or suit for not removing them has been sustained."

We heartily agree to all that has been urged in favor of free baths in crowded cities for those who have not, and cannot have, the advantages of such luxuries at their own homes, and we join in the regret that the life of a young mechanic should be lost under such circumstances, but the proposition presented in this case is a very different matter. The boy had no legal right to enter the river for the purposes of bathing therein at the place where he did. It was not at a public street or crossing, but 200 feet distant from one. It was not at a known bathing place, but was in the open river between a populous city on one side and an active borough on the other,

and at common law as well as by our own statute his act of
bathing at that place was prohibited.   The excavation was not
opposite a public street, and the defendants were rightfully
exercising a legal privilege in removing the sand and doing the
work in the usual and ordinary method which had been prac-
tised for many years.   Whatever is according to the general, usu-
al and ordinary course, adopted by those in the same business, is
reasonably safe within the meaning of the law ; this is the stand-
ard of duty between master and servant: Kehler v. Schwenk,
144 Pa. 348.   The test of liability is negligence, and negli-
gence cannot be imputed from the employment of methods of
machinery in general use: Reese v. Hershey, 163 Pa. 253.   The
same rule applies to methods and manner of doing the work
adopted by the defendants in this case.   They were not bound
in the exercise of ordinary care to anticipate and provide against
the act of a boy of this age, who, knowing that he could not
swim, and that such holes were in the near neighborhood, would
walk over a river bottom, which he could not see, and into this
hole.   In the course of nature the sides of such holes are never
clearly defined, and while the original excavation was about
thirty feet long, four and one half feet wide, and about ten
feet deep, with the water over it at a fourteen-foot stage, the
action of the moving water would soon change this excavation
to a longer, wider and more shallow one.   In time such a hole
could not be identified from the adjoining river bottom, and
while still existing, its location would be determined princi-
pally by the rejected gravel at its side.

It is to be legally presumed that a boy of the age of fifteen
and a half years is of sufficient capacity to be sensible of dan-
ger, and to have the power to avoid it: Oakland Ry. Co. v.
Fielding, 48 Pa. 320 ; Nagle v. Allegheny Valley R. R. Co.,
88 Pa. 35 ; Kehler v. Schwenk, supra.

In addition to the natural obstructions and hidden dangers
mentioned in Winpenny v. Philadelphia, 65 Pa. 135, the plain-
tiff's son would necessarily expect to encounter artificial pit-
falls and gravel banks—on one of which he undressed for his
bath—made by sand dredges, which would endanger his move-
ments from place to place, and which would, to a prudent
person, give notice of danger.   He voluntarily entered the
river in pursuit of his personal pleasure, and while not a

trespasser, he had no right to expect that the place would be prepared for him. He was bound to use all precautions which a cautious and prudent man would use, in the circumstances by which he was surrounded: Haven v. Bridge Co., 151 Pa. 620. It is a principle of law well settled in this state, that where a man negligently, and without excuse, places himself in a position of known danger, and thereby suffers an injury at the hands of another, either wholly or partially by means of his own act, he cannot recover damages for the injury sustained. If his negligence contributed in any degree to the production of the injury complained of, there can be no recovery: Lehigh Valley Railroad Co. v. Grenier, 113 Pa. 600.

The issue raised by the plaintiff, in the light of the evidence as we assume it (that the boy was drowned in a hole made by the defendants), is to be determined as a question of law. The facts and inferences to be drawn from them are undisputed, the measure of duty is determined the same under all circumstances, and the rule of duty may be accurately defined.

We have examined both phases of this case and conclude that under the evidence the defendants were not negligent in digging the sand from the river bottom at the place where the plaintiff's son was drowned, nor were they negligent in leaving the excavation in the condition described in the evidence, and the boy was guilty of contributory negligence to a degree that prevents recovery by the plaintiff.

The judgment is reversed.

RICE, P. J., dissenting:

After a careful examination of the evidence, I am constrained to the conclusion that the questions, whether the deceased had such knowledge of the special and peculiar risk as made his act in going in bathing at the place where he was drowned negligent, and whether it was feasible for the defendants to give warning of the danger consequent upon their acts and whether under all the circumstances, the giving of such warning was required by ordinary care, were questions of fact for the jury. I am unable, therefore, to concur in the judgment of the majority.