## The Wilmington and Reading Railroad Company *versus* Stauffer.

1. In proceedings by an owner of land against a railroad company for damages by the construction of their road, the court charged that he could not be compensated for the risk of fire to his barn and contents and added: "But if from the proximity of the road to the building, the danger of the fire is necessarily so imminent that no man of common prudence would use it for the purposes of a barn, but would be driven from it and compelled to provide himself with a barn elsewhere, then the plaintiff is clearly injured in this respect, and the jury must consider it in estimating the effect of the road on the property." *Held*, to be proper.

2. The depreciation of the value of property arising from the road and not an anticipated injury to the premises by fire is the subject of compensation.

3. The injury from location in relation to the peculiar features of the premises, proximity to buildings, interruption of their ordinary use and of the avenues of passage, inconvenience by embankments, deep cuts and the like, are proper subjects for consideration in estimating the depreciation in the value of the property as a whole.

4. The legislature intended to provide compensation for every injury usually recognised as such by the common law, if committed by a private individual.

January 20th 1869. Before Thompson, C. J., Agnew and Sharswood, JJ. Read, J., absent. Williams, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county:* Of January Term 1869, No. 266.

[Wilmington and Reading Railroad Co. *v.* Stauffer.]

The proceedings in this case commenced in the court below by the petition of The Wilmington and Reading Railroad Company asking for the appointment of viewers to assess damages sustained by Peter Stauffer by the construction of the company's road through his land. Viewers were appointed who assessed his damages at $630.65. Stauffer appealed and the case went to trial as in an action of trespass in which he was plaintiff.

The evidence was that the railroad ran at the distance of about 35 feet from one corner of the barn and 47 feet from another corner. The plaintiff (Stauffer) gave evidence tending to show that in consequence of the proximity of road the barn would be useless as a barn, and would be unsafe for stabling on account of danger from fire. This evidence raised the only question presented for consideration in the Supreme Court.

The defendant submitted this point:—

"The jury cannot take into consideration as an element of damage, unsafeness in the barn as a depository of the crops, because of the danger of its being burned by sparks from locomotives."

The court (Butler, P. J.,) charged:—

* * "The last item is on account of the alleged loss of the *use of the barn;* and this has given rise to the principal controversy in the cause. The defendant has asked us to charge that 'the jury cannot take into consideration as an element of damage unsafeness in the barn as a depository for the crops, because of the danger of its being burned by sparks from locomotives.'

"In answer we say: You cannot compensate the plaintiff for risk of fire to his barn or its contents—cannot hold the company responsible for anything that may be burned, nor for the risk of such burning.

"[But if from the proximity of the road to the building, the danger of fire is *necessarily so imminent* that *no man of common prudence* would use it for the *purpose of a barn,* but would be driven from it, and compelled to provide himself with a barn elsewhere, then the plaintiff is clearly injured in this respect, and the jury must consider it in estimating the effect of the road on the property. In this there is nothing uncertain or speculative.] If the building from any cause is rendered *unfit* for the purposes to which it has heretofore been applied, and for which it is best adapted, the property is certainly, and at once, depreciated to that extent (unless, indeed, the injury be compensated by advantages in the construction and use of the road). The surest, and therefore fairest test of the effect of a railroad on property is a comparison of its value at the time the road was projected, with its value on the completion of the same. Then, if a man of common prudence would consider this building unfit for the uses of a barn, and be driven from it, it necessarily follows that the property in

the market, as a farm (and there is no evidence of its being desirable for any other purpose), would realize to the owner just so much less in consequence of the road being there, as the value of the use thus lost (except, again, as this may be compensated by advantages), for all men are presumed to possess common prudence and to exercise it in the purchase of property. This would be otherwise if it appeared that the property was more valuable for other purposes than for agriculture, so that no barn might be needed. [If, then, the building has, from any cause (unavoidable imminent danger from fire included), become clearly unfit for the purposes of a barn, what common prudence would pronounce an *improper place* for storing inflammable produce and housing stock, the owner of the property must not be required or expected so to use it; and whatever cost he would be subjected to in supplying the loss of this use, should enter into your estimate of damages.]

" Then, is the building rendered *clearly unfit* for the purposes of a barn ? Not whether some other place would be more desirable ; but whether a man of ordinary prudence would consider it fit, and use it for the purpose ? In examining this question, you will carefully look at everything bearing upon it; remembering that it is the duty of the railroad company to exercise all possible care, consistent with the proper use of the road, to guard against fire, to adopt the most approved methods for avoiding the escape of sparks from its locomotives ; and that if it fails to do so, it becomes liable for all loss that may result from such negligence. [It is not, therefore, danger resulting from *negligence* that would deter a prudent man from using the building as a barn—for against all injury from this source he is virtually *insured*. It is only such danger as may be *unavoidable, inseparable* from the use of locomotives, even when the utmost care is observed, that can be considered in determining the question before us—whether common prudence would permit the use of this building as a barn.]

" The burthen of proof in this respect is on the *plaintiff;* he must satisfy you fully in regard to it, or your verdict must be against him as to this. [Now, we will repeat, under no circumstances can the jury allow the plaintiff anything on account of risk to the *building* referred to or its *contents*. It is the deprivation of the particular use to which the building has heretofore been applied, of which we have been speaking. If rendered unfit for the purposes of a barn it is still valuable; is not lost, as if destroyed ; it may be applied to some other purpose, or may be used in the construction of another barn.

" If the building can still be used for the purposes of a barn, then another question will arise, to wit :—Will the plaintiff be subjected by the road to any disadvantage in such use ? If the evidence satisfies you he will, then he must be compensated for this disadvantage, although he may not be wholly deprived of the

[Wilmington and Reading Railroad Co. *v.* Stauffer.]

use. In the one case you will observe you must estimate the *loss of the use*, and in the other the *disadvantage* simply in the *exercise of such use*, if the evidence shows such loss or disadvantage.]"

The jury found for the plaintiff $1204.75, which was made up of the following items, as appears by their statement filed:—

"Value of land destroyed, . . . . $147.50
　Value of fence and maintaining the same, . 407.25
　Damage done to barn, . . . . . 700.00
　Inconvenience of crossing railroad, . . 100.00

　　　　　　　　　　　　　　　　　　　$1354.75
　Advantages derived from railroad,　　　150.00

　　　　　　　　　　　　　　　　　　　$1204.75"

The defendants took out a writ of error, and assigned for error the refusal of the court to affirm their points, and the parts of the charge enclosed in brackets.

*W. Darlington* (with whom was *W. Townsend*), for plaintiffs in error.—The damages referred to in the point and spoken of by the judge in the parts of the charge excepted to were merely speculative, and could not be considered by the jury: Sunbury & Erie Railroad *v.* Hummell, 3 Casey 99; Lehigh V. Railroad *v.* Lazarus, 4 Id. 206; Lee *v.* Milner, 2 M. & W. 824; Turner *v.* Sheffield Railroad, 10 Id. 425; Patten *v.* N. Central Railroad, 9 Casey 432. The company would be liable only for negligent use: Lackawanna & B. Railroad *v.* Doak, 2 P. F. Smith 381; Monongahela Navigation Co. *v.* Coons, 6 W. & S. 101; Watson *v.* Pittsburg & Conn. Railroad, 1 Wright 479; Green *v.* Reading, 9 Watts 383; Commonwealth *v.* Fisher, 1 Penna. R. 463; Henry *v.* Pittsburg & Allegheny Bridge Co., 8 W. & S. 86.

*W. McVeagh* (with whom was *Rees Davis*), for defendant in error.—The landholder is entitled to compensation in full, according to the best estimate from actual elements that can be obtained: Harvey *v.* Lackawanna & B. Railroad, 11 Wright 428; E. Pennsylvania Railroad *v.* Hiester, 4 Wright 53; Searle *v.* Lackawanna & B. Railroad, 9 Casey 57; E. Pennsylvania Railroad *v.* Hottenstine, 11 Wright 28; Hornstein *v.* Atlantic & G. W. Railroad, 1 P. F. Smith 87; Thoburn's Case, 7 S. & R. 411.

The opinion of the court was delivered, February 4th 1869, by
AGNEW, J.—In determining this case we must consider only the instructions given by the court. Looking at the sum of $700 for damages done to the barn, found in the statement of items returned

by the jury, it is possible they misunderstood or disobeyed the instructions. For this error the remedy was a new trial. But one question is involved in the assignments of error, and we may therefore follow the example of the plaintiff in error, and consider all together. The court told the jury distinctly they could not compensate the plaintiff for the risk of fire to his barn or its contents, and could not hold the company responsible for anything that might be burned, nor for the risk of such burning. They then said: "But if from the proximity of the road to the building, the danger of fire is, necessarily, so imminent, that no man of common prudence would use it for the purpose of a barn, but would be driven from it and compelled to provide himself with a barn elsewhere, then the plaintiff is clearly injured in this respect, and the jury must consider it in estimating the effect of the road on his property." They then proceed to explain, by stating that the property is depreciated to the extent that it is thus rendered unfit for its proper purpose and use; that the fairest test of the effect of a railroad on property, is a comparison of its value at the time the road was projected, with its value at the time of its completion; that in consequence of this privation of use, the property in the market as a farm would realize the owner just so much less in consequence of the road being there. This is the substance of the instructions, and it will be seen that the court did not authorize any compensation to be given for the burning of the barn, or for the risk of fire, but submitted only the effect which the proximity of the road to the barn would produce upon the price or market value of the property, and this was left to be counterbalanced by the advantages which the property would derive by the construction and use of the road. Thus it will be noticed that it was the depreciation of the value of the property arising from the road, and not an anticipated injury to the premises by fire, which was held to be the subject of compensation. The case is therefore not governed by Railroad Co. v. Hummell, 3 Casey 99, and Railroad Co. v. Lazarus, 4 Id. 203. There is no difficulty in distinguishing it. The finding in Hummell's Case was for $1000, damages that may be done to the buildings from fire by the ordinary use of locomotives, excluding fires arising from negligence or carelessness. That was an evident attempt of the jury to forecast the risk of fire by accident, and was rejected by this court as wholly uncertain and speculative, it being founded on an event that might never happen, and rested on a mere calculation of chances. But that actual depreciation of value which arises from the special circumstances of the location and construction of the road, stands upon a different footing. Thus injury arising from the location in relation to the peculiar features of the premises, proximity to buildings, interruption of their ordinary use, and of the avenues of passage, inconvenience caused by

embankmcnts and deep cuts, and matters of this nature, have been always held to be proper subjects of consideration in estimating the depreciation of the value of the property as a whole. Therefore, it was said in Hummell's case itself, that no one can examine our laws providing for public improvements, without seeing that, in almost every instance, the legislature intended to provide compensation for every injury usually recognised as such by the common law, if committed by a private individual. In Searle *v.* Lack. & Blooms. Railroad Co., 9 Casey 62, it was said, "for all the actual damages arising from the manner in which the road went through the plaintiff's land and affected his improvements." In Patten *v.* North. Cent. Railroad, 9 Casey 432, "for injuries by cutting his land into portions that were inconvenient in shape, or inconveniently separated by deep cuts or embankments, and for any difficulty or diversion of a private road occasioned by the construction of the railroad above or below its grade." In Watson *v.* Pitts. & Conn. Railroad Co., 1 Wright 480, "it would be a narrow construction were we to hold that the legislature did not intend an assessment of all the damages which are the direct and immediate consequence of the construction of the railroad to the whole tract of land through which it may pass. It is upon the whole tract the road is located, though only a part of it is actually occupied;" and the construction given to such charters has been "that they are intended to secure compensation for all such injuries as the common law recognises as fit subjects of compensation:" East Penna. Railroad *v.* Hottenstine, 11 Wright 30; "allow for the disadvantages to the farm for the manner in which it may be cut by the projected or constructed road." See, also, Harvey *v.* Lack. & Bl. Railroad Co., 11 Wright 434, and Hornstein *v.* At. & Gr. West. Railroad Co., 1 P. F. Smith 90.

But this question has lately undergone examination, and the views of this court expressed by the Chief Justice, in a well-considered opinion, in West. Pa. Railroad *v.* Hill, 6 P. F. Smith 460. The subject there was a mill, cut off from the main land by an intervening railroad, and subjected to a loss of its custom, by the danger and risk of crossing the track with horses and teams and of hitching them at the mill. It was held that a depreciation of property by agencies that destroy its value, would undoubtedly be a ground of recovery of damages at common law, and the law recognises such injuries as fit subjects of compensation. It was such a depreciation in value which we think the court left to the jury in the present case, to be found from a consideration of all the circumstances, and hence we think no real error was committed by the court below.

　　　　　　　　　　　　　　　　Judgment affirmed.