## Hoffer *versus* The Pennsylvania Canal Co.

The Act of February 19th 1849, in terms authorizes compensation for damages purely consequential, and in estimating under said act the damages arising to a landowner from the construction, through his land, of an improvement by a railroad or canal company, the consequential damages resulting necessarily from the construction of said improvement are to be considered and not only those which are direct and immediate.

May 25th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent

Error to the Court of Common Pleas of *Dauphin county :* Of May Term 1878, No. 183.

These were proceedings instituted by the Pennsylvania Canal Company, under the Acts of February 19th 1849, and March 17th 1869, for the appointment of viewers to assess the damages done by enlarging and deepening its canal through the land of Joseph Hoffer.

Hoffer has, for many years, been the owner of a farm containing about one hundred and forty-three acres, and lying about five miles south of Harrisburg. Running through the entire length of this farm, in parallel lines, are the Middletown turnpike, the Pennsylvania canal and the Pennsylvania railroad. The western boundary line of said farm is the Susquehanna river, running parallel with the aforesaid highways. The buildings belonging to this farm are situate along the line of the turnpike, and with the large portion of the farm, lie east of the canal. Between the canal and railroad is a strip of land from forty to eighty feet wide, and beyond the railroad and between it and the river, are lying about eight acres of good farming land. To afford access to these smaller tracts of land from the main body of the farm, a farm bridge was constructed by the state across the canal when originally built. There were fences along both sides of the canal, and on the west, or towing-path side, Hoffer planted, on his own lands, a line of nearly half a mile of willow trees.

In 1871 the Pennsylvania Canal Company, then and now the owners of said canal, by virtue of the Act of March 17th 1869, proceeded to widen, deepen and enlarge this part of their works. In the enlargement of their works the company took some of Hoffer's land. The embankments of the canal being raised and the volume of water in the canal increased, his lands along the tow-path were damaged by water percolating through the banks and resting on the lands. Willow trees were cut down and carried away by the company ; the fences were destroyed and carried off; and the farm bridge was raised by the company about eighteen inches or two feet, thus increasing the difficulty of access to the lands beyond the canal. Mr. Hoffer then brought an action of trespass, whereupon these proceedings were commenced by the company.

At the trial, the defendant proposed to ask a witness "if by reason of deepening and raising the banks of the canal and the water therein, there had not been an increase of water on the defendant's land by the percolation and the water seeping through and resting on the land by which it was more injured than before."

The court overruled this offer, saying, " The Canal Company is only answerable for *taking* the land, not for injury caused indirectly by percolation through the banks."

In the general charge, the court, Pearson, P. J., inter alia, said: " We come now to that which is principally complained of, the

[Hoffer *v.* Pennsylvania Canal Co.]

raising of the bridge and construction of the road leading there-from."

"The state had originally built what is known as a farm bridge at this place. The owner of the land had a field across the canal from his residence, and a bridge was necessary to reach it; on raising the canal as stated the witnesses say that it was necessary to increase the height of the bridge to enable the boats to pass under. The company was authorized by law to deepen and if necessary to raise the canal. If you are satisfied that it was necessary to increase the height of the bridge, and it was done properly, and to no more elevation than was necessary for good safe navigation, then we instruct you it was not illegal but authorized by law. A road led from this bridge down to the railroad, about fifty yards distant, and in the direction of the defendant's field. This road was made under plaintiff's direction. Its engineer states that it started on a level with the floor of the bridge, and ran by a regular grade to the edge of the railroad, which, owing to the increased height of the bridge, was steeper than the former road at that place. . Was the grade any greater than was necessary at the point? The road could not be carried over the railroad with earth in the manner such roads are ordinarily made. Was the canal company bound to carry this road at such an elevation as would cross the railroad above the reach of locomotive chimneys, and the tops of cars? If not, was the road made in a skilful and proper manner and with no steeper grade than was necessary at that place? If the jury is satisfied that under the circumstances the road was judiciously and properly built, the plaintiff is not responsible for the inconvenience to which the defendant may be put by reason of some trouble in locking his wagon wheels in going down the road to reach his field, or the inability to haul so large a load when coming from it. The plaintiff says that this is not a *taking* of defendant's property for which it is liable. That may be the case, but for the present you may treat it as if there was responsibility, and judge whether the bridge was necessarily raised and the road properly and judiciously graded, and if satisfied that both points are with the plaintiff, the defendant can recover no damages on that account. Besides, the injury must in such cases be direct and immediate—not remote and consequential. You will in your verdict state all of the subjects for which you allow damages, and how much for each, and make the maps in evidence part of your verdict, to show precisely what land was taken."

The viewers in their report had awarded Hoffer $775, in damages. The verdict at the trial was for only $200.46, when he took this writ and assigned for error, the rejection of his offer of testimony and the portions of the charge noted.

*Thomas E. Franklin* and *Elias Hollinger*, for plaintiff in error.—We contend that the rule established in the Monongahela Navi-

[Hoffer *v.* Pennsylvania Canal Co.]

gation Co. *v.* Coons, 6 W. & S. 101, applies only when there is no taking, and when the damages are purely and entirely speculative and consequential.   But where there is a taking, as in this case, then we say the proper rule is the one laid down in the case of the Schuylkill Navigation Co. *v.* Thoburn, 7 S. & R. 422, or in East Brandywine Road *v.* Ranck, 28 P. F. Smith 454, in which Judge PAXSON says : " It is the settled rule that the measure of damages in such cases is the difference between the value of the property, as a whole, before the opening of the road and its value as affected by the road."    Where property is taken, the owner is entitled to compensation for that which is taken, and the depreciation of what remains : Watson *v.* Pittsburgh and Connellsville Railroad Co., 1 Wright 469 ; Western Pennsylvania Railroad Co. *v.* Hill, 6 P. F. Smith 460 ; P., F. W. & C. Railway Co. *v.* Gilleland, Id. 445.

The damage arising from the raising of the bridge is less remote than that arising from the percolation of the water, and the foregoing rule for the measurement of damages applies with much greater force to this item of damage.

*Hall & Jordan*, for defendant in error.—The court below was clearly right in ruling that any damage done by the percolation was consequential, and is within a class of cases from Monongahela Navigation Co., *supra*, to Canal Co. *v.* Mulliner, 18 P. F. Smith 357.   The allowance of damages for the raising of the bridge is covered by the latter case.

Mr. Justice GORDON delivered the opinion of the court, June 10th 1878.

Under the Act of February 19th 1849, the viewers, appointed for the purpose of assessing the damages resulting to the owner whose land has been appropriated for the use and purpose of a canal or railroad company, are required, first, to determine, the quantity, quality and value of the lands taken and occupied.   If the matter stopped at this point, we would at once agree with the learned judge of the Common Pleas that consequential damages, resulting necessarily from the construction of the improvement, could not be considered.    But it does not; for the viewers are required, after having made a fair and just comparison of the advantages and disadvantages, resulting from the construction of the railroad or canal, to estimate what amount of damages has been or may be sustained and to whom payable.   As the damages, here spoken of, cannot have reference to the land actually appropriated since, as to it, its price is a full compensation, it follows, that we must construe this statutory direction to mean an estimation of the depreciation, resulting to the remaining lands of the proprietor, from the construction of the works.   In other words, the statute does, in terms, authorize compensation for damages purely consequential.   Hence, it has been

[Hoffer v. Pennsylvania Canal Co.]

held that the legislature intended the assessment of all such damages as are the direct and immediate consequences of the construction of the road, to the whole tract through which it may pass; for the injury done to the tract as a whole, of whatsoever components that injury may consist: Watson v. The Pittsburgh and Connellsville Railroad Co., 1 Wright 469. And, further, that the measure of damages, to a landowner, caused by the construction of a railroad through his land, is the difference between what the property would have sold for before and after the road was built: Harvey v. The Lackawanna and Bloomsburg Railroad Co., 11 Wright 428. This rule covers everything which tends to cheapen the land through which the road passes, and must, necessarily, include, not only damages which are direct, but, also, those which are indirect. So it was said by Mr. Justice AGNEW, in the case of the Pittsburgh, Fort Wayne and Chicago Railway Co. v. Gilleland, 6 P. F. Smith 445, that all the probable consequences of the works in producing injury must be allowed for, such as would fairly arise to the mind of an intelligent viewer in considering the effect of such works. Following in the line of this same doctrine, it has been ruled that it was proper for viewers to take into consideration the loss of business to a mill, the proximity of the railroad rendering it an unsafe place for horses: Western Pennsylvania Railroad Co. v. Hill, 6 P. F. Smith 460. Again it was said, by Mr. Justice AGNEW (Wilmington and Reading Railroad Co. v. Stauffer, 10 P. F. Smith 374), that injury arising from the location of the works, in relation to the peculiar features of the premises, proximity to the buildings, interruption of their ordinary use, and of the avenues of passage; inconvenience caused by embankments and deep cuts, and matters of this nature, have always been held to be proper subjects of consideration in estimating the depreciation of the property as a whole. Many other authorities might be adduced in proof of what is above written, but enough has been shown to exhibit the error into which the learned judge fell, when he instructed the jury that the only injury to the premises of Hoffer, which could properly be considered, was such as was direct and immediate and not such as was consequential. This, of course, limited the compensation to the value of the land taken and the property directly damaged. Following this rule, all injuries, arising from the increased percolations of the water caused by the raising of the canal banks, as well as those resulting from the elevation of the bridge, were excluded from consideration. This ruling cannot be supported, inasmuch as compensation was denied for damages resulting from the nature and character of the new work. The new banks, for the enlarged work, may have been as well constructed as possible for human skill and yet the amount of water thrown upon Hoffer's land, by the increased percolations, may have seriously injured it; and so the raising of the bridge may have added greatly to the inconvenience of passing from one part of his

6 NORRIS—15

[Hoffer *v.* Pennsylvania Canal Co.]

farm to the other, though the grades to and from that structure may have been as low as the nature of the ground and surrounding circumstances would admit of, and one or both these causes combined may have largely reduced the value of his property. To deny the landowner compensation for these injuries accords neither with the Act of Assembly nor the rulings of this court. The attempt to assimilate this case with that of the Monongahela Navigation Co. *v.* Coon, and others of that type, fails in this, that those were common-law actions on the case for consequential damages, unconnected with any taking of property, whilst the present is a case falling within the purview of a statute regulating the manner in which corporations may take the lands of private persons for their own use, and prescribing the damages the owners may recover for such taking. As we have already said, if this act had only provided for compensation for the land actually taken, the ruling of the court below would have been unobjectionable; no compensation could have been recovered for injuries to the adjacent property resulting from the construction and use of the improvement, but it was just in this the mistake was made, the act does provide for such damages and the jury should have been permitted to consider them.

The judgment is reversed and a new *venire* is awarded.