## E. C. POTTS ET AL. v. THE PENN. S. V. R. CO.

ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 3, 1888—Decided March 19, 1888.

In proceedings for the recovery of damages incurred from the construction of a railroad, it was shown that the location had taken a portion of a small lot for many years used as a shipping point for marble quarried upon a large tract a mile or more distant and shipped to a sales-yard in Philadelphia, the three properties being owned severally by the plaintiffs, who were engaged as partners in the mining, shipping and sale of marble: *Held,*

1. That, as the properties were each disconnected from the others and each used for a distinct and separate purpose, and the several titles owned by different persons, neither could be considered as appurtenant to or a parcel of the other, and the recovery of damages must be confined to the injuries to that property a portion of which was taken.

2. That in order that two properties having no physical connection may be regarded as one, in the assessment of damages for right of way, they must be so inseparably connected in the use to which they are applied as that the injury or destruction of one must necessarily and permanently injure the other.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; TRUNKEY and GREEN, JJ., absent.

No. 117 January Term 1888, Sup. Ct.; court below, No. 88 March Term 1886, C. P.

The contention below was on an appeal from an award of viewers appointed to assess damages in a proceeding wherein E. Channing Potts, E. Channing Potts and W. W. Potts, trading as E. Channing Potts & Bro., and E. Channing Potts and W. W. Potts, tenants in common, were plaintiffs, and the Pennsylvania Schuylkill Valley R. Co., defendants.

At the trial on October 17, 1887, it appeared that on June 18, 1883, the date of the location of defendant company's road, E. Channing Potts and W. W. Potts were the owners as tenants in common of a tract of about 100 acres of land in Whitemarsh township, operated chiefly as a marble quarry; E. Channing Potts was the owner of a lot, containing from 4 to 6 acres, at Spring Mill, about one half an acre of which was appropriated by the defendant's location; E. Channing Potts was also the owner of a sales-yard at Ninth and Thompson streets, Philadelphia. The three properties were held under a parol lease by E. C. Potts and W. W. Potts, trading as E. Channing Potts & Bro. in the business of mining, shipping and selling marble and flux, the Spring Mill lot being the shipping point and the property at Ninth and Thompson streets a place of storage and sale. The other material facts appear in the opinion.

E. Channing Potts, called for plaintiffs: Q. Where was this marble quarry? A. The marble was quarried in Whitemarsh about one mile from Spring Mill, on the property belonging to my brother and myself. Defendant objects.

Counsel for plaintiffs state that they propose to show in the course of this trial that this is one business and that the three properties were connected together in such a way as that the destruction of any one of them involved the destruction of the other two; that this piece of property which was in Mr. Channing Potts's own name, was an essential link to join the two properties together and that the moment that that was destroyed it destroyed the usefulness of the other two; and that the damages that resulted to E. C. Potts & Bro. in the prosecution of their business involved a large loss to them in the carrying of their traffic and depreciated the market value of their properties which were thus cut.

Charge of Court below.

By the court: As I view this case, there are only two parties who are entitled to recover here: first, E. Channing Potts & Bro., if they can show that they have a leasehold interest in this property, and that this leasehold interest has been injured or destroyed, must be paid for the amount of the injury, or for the destruction; and in order that the jury may ascertain what the value of that leasehold interest is, they are entitled to have a full description of the business conducted there; and in order that the jury may find what that business was, they are entitled to know just how the business was conducted. Then the only other party that can recover, as I view it, is E. Channing Potts, who is the owner of this particular railroad lot. He is to recover for the injury or destruction of this particular lot, and that the jury may ascertain what the loss is, they can take into consideration its location, its adaptability as a shipping point, and if by reason of its location and connection with other properties, it has a particular value, and the market value of the property has been destroyed, he can recover for that. But I do not see how E. Channing Potts and William W. Potts, as tenants in common, can recover anything for the marble quarry property. I therefore will allow you to prove just exactly what the nature and character of the business was, that was conducted here by the tenants, so that the jury may know what the value of that leasehold was, if they find it was destroyed or injured; and I will allow you to show how this lot is located, its adaptability as a shipping point, and what its value was before the railroad was located, and what its value was immediately after the railroad was located, in order to ascertain the damage to that lot.[1]

Several other like offers were made on the part of the plaintiffs and excluded on like grounds.[1]

The court, SWARTZ, J., so far as relating to the question decided here, charged the jury in accordance with the foregoing ruling and answered the plaintiffs' points as follows:

1. That the jury are to allow E. Channing Potts, as owner of the Spring Mill lot such damages as they may find he has sustained by reason of the injury to his shipping place there caused by the construction of the road.

Answer: This is true, but in estimating these damages the

jury must not consider this Spring Mill lot or shipping place as part of the quarry property; and the sole measure of damage is the depreciation of the market value of this lot as affected by the location of the railroad of the defendants.[9]

2. That the jury are to allow Potts & Bro. as a firm such damages as they may find they have sustained by reason of their being deprived of the shipping place upon the Spring Mill lot.

Answer: This is true if the jury find that Potts & Bro. as lessees of the Spring Mill lot, were deprived of their shipping place by the location of the railroad of the defendants; and the measure of damages for the loss or injury to their shipping place is the depreciation in the market value of the balance of the term of their leasehold estate as affected by the location of the railroad of the defendants.[10]

3. That if the jury believe the evidence, which is not contradicted, that the firm of Potts & Bro. were lessees of the marble quarries in connection with the Spring Mill lot as a shipping point and with the yard in Philadelphia, the jury are to allow them as lessees, such damages as they may find they, as such lessees, have sustained, occasioned by the construction of the defendant's railroad.

Answer: I cannot affirm this point as it stands. There is no testimony that the court remembers, that Potts & Bro. were the lessees of the marble quarry. If the jury believe the evidence that Potts & Bro. were lessees of the Spring Mill property and the yard in Philadelphia, then the damages sustained by Potts & Bro. in their leasehold interest must be allowed, and the damages are to be measured as explained in the answer to the second point just given.[11]

4. That in considering the question whether the plaintiffs have derived any advantage by reason of the construction of this railroad, they are not to consider any advantages which are common to the whole neighborhood.

Answer: This is true, and yet the advantages that the plaintiffs enjoy in common with others may also be special to the plaintiffs. For example, a railroad company may be entitled to the benefit of an advantage accruing to claimants from the proximity of a railroad station, although the same advantage would necessarily be enjoyed by the neighboring farmers.[12]

5. That the jury are to allow all damages sustained by either and each of said parties, both direct and consequential.

Answer: This is true, but the damages must be determined by the tests already given to you.[13]

6. That in assessing the damages, the jury are also to allow such damages as Potts & Bro., as lessees, sustained, and all damages that E. Channing Potts has sustained by reason of the defendants not having put in a railroad crossing.

Answer: This is true, but damages could not be included for making the crossing itself, for that is to be made by the company defendant, but for the damages already sustained by reason of its not having been constructed.[14]

The jury returned a verdict in favor of E. Channing Potts and E. Channing Potts & Bro. for the sum of $3,374.06, divided as follows: To E. Channing Potts & Bro., $2,112.73, and to E. Channing Potts, $1,261.33. As to E. Channing Potts and W. W. Potts, the verdict was for the defendants. Judgment being entered, the plaintiffs took this writ, assigning for error:

1. The refusal of the plaintiffs' offers.[1]

9–14. The answers to the plaintiffs' points.[9 to 14]

*Mr. Chas. Hunsicker* and *Mr. Edward J. Fox* (with them *Mr. G. R. Fox*), for the plaintiffs in error:

1. We know of no rule of law which requires properties to be adjoining in order to be parts of the same property. Had the siding been on the quarry property, and been joined to it, no one will pretend but that the question would have been, how has this affected the market value of the property as a whole? Under § 8, article XVI., of the constitution, it has been ruled over and over that all damages, both direct and circumstantial, shall be paid: Pusey v. Allegheny, 98 Pa. 522; Williams v. Pittsburgh, 83 Pa. 71; Reading v. Althouse, 93 Pa. 400; Patent v. P. & R. R. Co., 14 W. N. 545; Finn v. Gas & Water Co., 99 Pa. 631.

2. The court below stated that the quarry property was disconnected with the Spring Mill property. This was the very point in dispute, and our offers to prove that these properties were indispensable to each other and constituted but one pro-

perty were steadily ruled out. This whole property was owned by one man, devised as one property to one of his sons, and used as one property as such for over forty years. The one act of the defendant did the injury to the whole. In substance the offer was to prove that the lot on which the company entered was a parcel of the land on which the quarry was situate, and should have been admitted: 3 Washb. R. P. 396; Merritt v. Moore, 108 Mass. 276; Scheetz v. Fitzwater, 5 Pa. 126; Allen v. Scott, 21 Pick. 29; 2 Washb. R. P. 623; Forbush v. Lombard, 13 Metc. 114.

*Mr. Charles H. Stinson*, for the defendant in error:

Whilst the constitution provides for compensation for land taken, injured or destroyed, no court has decided that land and property two miles from the land taken, remaining just as it was before, capable of the same cultivation and development, is within the constitutional provision.

OPINION, MR. JUSTICE CLARK:

The plaintiffs, E. Channing Potts and brother, were in the year 1883 engaged in the business of quarrying, sawing, and selling marble, etc. Their quarry was located on a tract of land in the township of Whitemarsh, Montgomery county, consisting of about one hundred acres. The product of the quarry was transported in wagons to a siding of the Philadelphia and Reading Railroad at Spring Mill, a mile or more distant from the quarry, where they had a lot of land of about four acres, which they used for storage and for loading and shipping on the Philadelphia and Reading Railroad to their sales-yard or depot and business place, at Ninth and Thompson streets, in the city of Philadelphia. The Spring Mill lot and the yard at Ninth and Thompson streets were the individual property of E. Channing Potts. The quarry was owned by E. Channing Potts and W. W. Potts, as tenants in common; whilst E. Channing Potts & Bro. were in the possession and enjoyment of all these several properties, to wit: the quarry, the shipping lot, and the marble yard, as lessees from year to year and copartners, conducting the general business of preparing, transporting, and selling the products of the quarry. We have, therefore, three distinct claims for compensation:

first, that of E. Channing Potts, the owner in reversion of the fee of the Spring Mill and Philadelphia properties; second, that of E. Channing Potts and W. W. Potts, tenants in common of the quarry; and third, that of the firm of E. Channing Potts & Bro., lessees from year to year of the three properties combined.

The Pennsylvania Schuylkill Valley Railroad Co. located their road on the Spring Mill lot, appropriating one half acre, more or less, of the land; their road ran parallel with the Philadelphia and Reading Railroad, between that road and the quarry, the grade line of the former being about two and a half feet above that of the latter, cutting off the switch and siding connections which the plaintiffs had with the Philadelphia and Reading Railroad.

The plaintiffs' contention is, that their partnership business has thereby been broken up and ruined, that the market value, not only of the Spring Mill lot, but of the quarry and of the marble yard has been greatly impaired and depreciated in the hands of the lessees, and also of the respective owners thereof; that the three properties, although not contiguous, were used as one; that the destruction of the siding and shipping facilities at Spring Mill was an injury to the quarry and also to the sales-yard, and that damages, both direct and consequential, must be awarded to the several plaintiffs in this proceeding, according to their respective injuries and interests.

The court instructed the jury in substance, that in the assessment of damages they were confined to the Spring Mill property; that the sales-yard in Philadelphia and the quarry lot in Whitemarsh were disconnected and distinct properties from the shipping lot at Spring Mill; and that the owners and lessees thereof suffered no injury from the construction of the railroad which could be redressed in this form of proceeding; and in this, we think the court was correct.

No case has been called to our attention which rules, explicitly and arbitrarily, that several pieces of real property, not contiguous, cannot for that reason, under any circumstances, be considered as one property. The general rule, however, undoubtedly is, that disconnected properties are to be treated as distinct properties, and damages for right of way will ordinarily be assessed on this principle. Where a person resides

upon one of a number of contiguous town lots, but uses all of them together as his homestead, as if the whole constituted but a single inclosure, and a railroad company appropriates a portion of one only of the lots, the damages will doubtless be assessed for the injury done to the whole property.   So, if one buy a farm in separate contiguous portions from different persons, but occupy the whole in a body for farm purposes, as one farm, the damages for the appropriation of a part, or even the whole, of one of the original pieces will be assessed upon the injury done to the whole tract.   Peculiar and isolated cases may perhaps exist, also, where although the lands are not in fact contiguous, yet the uses to which they are applied, respectively, are in their nature so intimate and dependent, one upon the other, that an injury to one must necessarily be taken as an injury to the whole taken together; for example, the land upon which a water mill is erected will ordinarily draw to it as an appurtenance, or rather will be regarded as embracing the ground covered by the reservoir, so that the latter will be regarded as part and parcel of the former, although they are not contiguous.

But we do not regard this case as coming within the general exception stated.   The quarry was a distinct and disconnected property from the Spring Mill lot; it was devoted to a wholly different purpose, and the same may be said of the sales-yard at Ninth and Thompson streets.   The first was a quarry used for quarry purposes alone, and the product was delivered at Spring Mill over the public wagon road; the second was a shipping point, having no connection with the quarry, by contact of the lines, by railway, or any other private means of transportation; and the yard at Ninth and Thompson streets was a sales-yard accessible by the Philadelphia & Reading Railroad; thus they were each disconnected from the others, and each was used for a distinct and separate purpose.   They were not only different properties, applied to different uses, but the fee was held and owned by different persons ; neither of them could be considered as appurtenant to, or part and parcel of the other.   There was no special reason, outside of the conveniences and appliances existing at Spring Mill, why the marble should be shipped from that point; and for these appliances the plaintiffs were entitled to be paid.   The quarry

might be successfully operated without the property at Spring Mill. The railroad was accessible at other points, and for aught that appears or was offered to be shown, equally available shipping facilities might be supplied elsewhere. If the company had appropriated a part of the sales-yard in Philadelphia, could it be pretended that damages would accrue for supposed injuries to the properties in Montgomery county? If the contention of the plaintiff in error be correct, that the three properties are to be regarded as one, this result must certainly ensue; but there was no commanding necessity that the marble product of the quarry should be sold at Ninth and Thompson streets. If that yard was especially valuable for the purpose, compensation commensurate to the injury would be made, and some other market place could be provided.

An extensive business partnership may conduct a variety of operations, as distinct in their character as the location of its various departments; and if their different and disconnected properties are to be regarded as one property because they are used in one business, the assessment of damages for right of way would become liable to such complications as would greatly embarrass the administration of the law, in this form of proceeding. In order that two properties, having no physical connection, may be regarded as one, in the assessment of damages for right of way, they must be so inseparably connected in the use to which they are applied, as that the injury or destruction of one must necessarily and permanently injure the other.

It is perfectly plain that, apart from the alleged connected use to which the three several properties have hitherto been applied, the plaintiffs could have no claim arising out of the construction of the road, for any supposed consequential injury, either to the quarry or to the sales-yard; the railroad did not touch either of them, or any right or easement appurtenant thereto, and there is nothing upon which an action at the common law could be sustained in such a case.

It did the plaintiffs no harm, therefore, that they were denied the privilege of proving that these properties were used as stated in the offer. In the consideration of the case, we assume all that was offered to be proved. We are of opinion that the plaintiffs were not entitled to damages, direct or conse-

quential, for any supposed injury either to the quarry or to the yard at Ninth and Thompson streets.

The judgment is affirmed.