# The McKeesport Gas Company, a Corporation, The United Coke and Gas Company, a Corporation, The United States Glass Company, a Corporation, The W. Dewees Wood Company, a Corporation, and The City of McKeesport, a Corporation, *v.* The Carnegie Steel Company, Limited, Appellant.

*Rivers—Obstruction of river by slag—Injunction.*

A decree restraining an industrial establishment situated in the borough of Duquesne, on the Monongahela river, " from hereafter depositing any slag, cinders or other materials whatever below low water line of the river, that is, below the line of the water at ' pool full '—and from filling or otherwise making the slope of the bank from low water to high-water line more than one foot to three feet, that is, one foot rise to three feet horizontal distance," is not an unreasonable decree.

Argued Nov. 14, 1898.   Appeal, No. 140, Oct. T., 1898, by defendant, from decree of C. P. No. 2, Allegheny Co., July T., 1897, No. 715, on bill in equity.   Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity for an injunction.

The facts appear by the opinion of the court by WHITE, P. J., which was as follows :

The bill charges that the defendant company was filling out slag, cinders, etc., from their works into the river, narrowing the channel and causing high water at McKeesport, to the special damage of plaintiff, and asking to have defendant company restrained, etc.

The defendant company's works are on the opposite side of the river from McKeesport, about a mile or so below. The works are quite extensive, having a river front of between six and seven thousand feet; the ordinary daily output of metal is from 15,000 to 20,000 tons; of course there is a large refuse of slag, cinders, etc.

The defendant company purchased the land before 1895, and in that year began the erection of their furnaces, buildings, etc., which were completed in 1896. A part of the ground was low bottom land, overflowed in high water. At some places along the river there were two banks. The first was six or eight feet high with a beach of some thirty or forty feet between it and the river. This bank was overflowed in ordinary high water ; the second bank was farther inland, some twenty-five or thirty feet high, and above the line of great floods. The defendant company deposited their slag, cinders, etc., on the low bottom ground, and along the banks, mainly on the upper bank, but filling out and over the lower bank, and in some places extending down to the water.

The W. Dewees Wood Company is a large iron establishment in McKeesport, fronting on the river ; and just below it are the McKeesport Gas Company's works. The United States Glass Company and the United Coke and Gas Company are on the bank of the river, about two miles above McKeesport.

The flood in February, 1897, was about three feet higher than ever known in McKeesport. The water overflowed the banks of the river, flooded the works of the plaintiffs, stopping all operations, doing considerable damage. Believing the flood was occasioned by the defendant company narrowing the bed of the river, this bill was filed. The defendant company denies it ever filled out into the river, and is in no way responsible for the flood of February, 1897.

### FINDINGS OF FACT.

1. The flood of February, 1897, was an extraordinary flood, occasioned mainly by the high waters in the Monongahela and Youghiogheny rivers. But if there had been no encroachments upon the natural channel of the river at McKeesport and below, the water would not have risen nearly so high at McKeesport.

2. Prior to the erection of the defendant company's works on a part of the land they purchased there had been iron works, the slag and cinders from which had been piled along the bank of the river, causing some obstruction to the spread of the water at high stages.

3. Before the erection of dams in the Monongahela river, low water line was much lower down than after the dams were erected. After the dams were erected, low water mark, as understood and recognized all along the river, was the shore line of the water when it was just going over the dam, or at "pool full" as it is expressed. For several years past, boards have been used on top of the stone work of the dams to increase the depth of water in the pools, about two feet. Low water mark means when the water is to the top of the boards, which are always put up when the river is low.

4. Although the defendant company has generally deposited its slags, cinders, etc., on the low bottom land, and along the upper bank of the river, yet it has spread out over the lower bank, and at places gone down to the water, and in a few places somewhat below the proper low water line. None of its buildings, however, are below the upper bank. But the piles of slag and cinders give a steep bank, steeper than a proper slope between low and high water lines, and thus contract and obstruct the flow of water at great floods.

5. The flood at McKeesport in February, 1897, was about twenty-six feet above low water line. The least slope between low and high water lines should be one to three feet, that is, for three feet horizontal the rise should be only one foot. For a rise of twenty-six feet, the horizontal line, that is, the horizontal distance between low and high water lines should be eighty feet. The piles of slag and cinders from defendants' works at places exceed that grade.

6. The McKeesport Gas Company and the W. Dewees Wood

Company have filled out into the river from 100 to 150 feet, and on the W. Dewees Wood Company, temporary buildings are now standing over where the water formerly flowed.

7. The flood of February, 1897, while mainly due to the extraordinarily high water in the rivers, yet was increased and aggravated by the filling out into the bed of the river and thus narrowing the channel by the wrongful encroachments of the said companies. In consequence of these and other parties filling out into the river, the city of McKeesport has had to extend its streets to the present bed of the river. If there had been no obstructions at McKeesport, the obstructions caused by the defendant company would not have swelled much, if any, the flood at McKeesport and above. The United Coke and Gas Company and the United States Glass Company have not as yet made any encroachments upon the river.

### CONCLUSIONS OF LAW.

The W. Dewees Wood Company and the McKeesport Gas Company being guilty themselves of filling out into the river and thus contributing to the flood of February, 1897, have no standing in equity to complain of the acts of defendant company.

For forty years and more, the furnaces, iron works and factories, and some railroads, have been pushing out the banks of our rivers and contracting the currents, thus increasing the height of the water during floods and the swiftness of the currents. The evil is yearly augmenting. The high and low water lines fixed by the commissioners appointed in 1858 have been disregarded in many cases, and most of the monuments obliterated. Unless these encroachments upon the banks and channels of the rivers be stopped, navigation will be seriously interfered with, and great damage done to private property. The lines fixed by the commission of 1858 extended very little beyond the limits of the city at that date. Since then many iron works and large establishments have been erected on the banks of the rivers, down the Ohio, and for twenty-five miles up the Monongahela and Allegheny. The federal government, or the state legislature, perhaps both, should take action without delay to remove present obstructions and prevent any in the future. High and low water lines should be fixed and marked by permanent monuments some distance down the Ohio and at least twenty-five

miles above on both rivers. Penalties for removing the monuments will not be sufficient because of the difficulty of proving who removed them. In addition to penalties there should be express power given to the courts, or some other tribunal, to ascertain any encroachments or obstructions and require their removal.

This defendant company has made some encroachments upon the river, but trifling when compared with many others. It would be unjust to punish it severely when much greater sinners go unpunished. It will be sufficient to prevent future encroachments.

The court entered the following decree:

And now, January 15, 1898, this cause came on to be heard on bill, answer and testimony, and after argument by counsel and full consideration of the cause, it is ordered, adjudged and decreed that the defendant company be and is hereby restrained from hereafter depositing any slag, cinders or other materials whatever below low water line of the river—that is, below the line of the water at " pool full," and from filling in or from otherwise making the slope of the bank from low water to high water line more than one foot to three feet, that is, one foot rise to three feet horizontal distance. And it is further ordered that the costs of this case be paid, one third by the defendant company, one third by the McKeesport Gas Company and one third by the W. Dewees Wood Company.

*Error assigned* was the decree of the court.

*George E. Shaw*, with him *P. C. Knox, James H. Reed* and *Gibson D. Packer*, for appellant.—A public nuisance cannot be restrained at the suit of a private person who has not sustained particular loss, and unless special injury is shown the court has no jurisdiction : Gould on Waters, sec. 125 ; Angell on Water Courses, sec. 572 ; Sparhawk v. U. P. Ry., 54 Pa. 422 ; Phila. v. Collins, 68 Pa. 106 ; B. M. Coal Co. v. L. C. and Nav. Co., 50 Pa. 91 ; Pittsburgh v. Scott, 1 Pa. 309 ; Philadelphia's App., 78 Pa. 33 ; Bigelow v. Hartford Bridge Co., 14 Conn. 579.

The maxim that " he who comes into equity must come with clean hands " applies to cases of this character, and the extraordinary remedy by injunction will not be granted when the

plaintiffs stand convicted of acts which had contributed to the injury of which they complain: Pomeroy's Equity Jurisprudence, sec. 397; Cassady v. Cavenor, 37 Iowa, 300; McAllister v. Henderson, 134 Ind. 453; Palmer v. Harris, 60 Pa. 156.

*W. B. Rodgers*, with him *S. J. Graham* and *T. C. Jones*, for appellees.

Per Curiam, January 3, 1899:

The decree of the court below simply restrains the defendant, "from hereafter depositing any slag, cinders or other materials whatever below low water line of the river, that is, below the line of the water at 'pool full'—and from filling in or otherwise making the slope of the bank from low water to high water line more than one foot to three feet, that is one foot rise to three feet horizontal distance." We do not understand that the defendant can possibly have a right to fill in materials below low water line, and we do not see any reason for holding that the slope of the bank as fixed by the court is so unreasonable as to be erroneous. In this view of the case it is not necessary to discuss the various matters covered by the assignments of error.

Decree affirmed and appeal dismissed at the cost of appellant.