# Darlington et al., Appellants, *v.* Pennsylvania R. R. Co.

*Eminent domain—Railroads—Land damages — Divided tract— Present and prospective use—Evidence—Lateral Railroad Act of May 5, 1832, P. L. 501.*

1. Where land lying on either side of a highway, canal or railroad is held, used, occupied and cultivated in its entirety as a farm, and a part on one side is appropriated, the owner may recover as damages compensation for the injury or depreciation in value to the entire farm.

2. Where land is so divided, the theory of entirety is predicated solely on its present use as a whole, and depreciated value has reference to that use.

3. If a tract of land is divided by a canal, and is used as a whole as a farm, and a portion on one side of the canal is taken, evidence is inadmissible as to the suitability and advantages of the entire property for a furnace and rolling mill site.

4. If used as a farm, communication between the several parts is permissible under the law; but, as a manufacturing site the inter-mill traffic necessary to make the pieces contiguous, would not be permitted without the consent of the owner of the intervening strip.

5. The Lateral Railroad Act of May 5, 1832, P. L. 501, has no application to this case.

6. If the owner claims damages for the best possible use of the land, he must have it presently in his power to make the use available; if the use depends on the affirmative action of others or the courts, the land cannot be said to be presently useful for that purpose.

7. If the land abuts on a river, the owner cannot show that the river bottom could be dredged and the property taken be made available for river traffic, inasmuch as the owner would not have the right to enter upon the property of others to make any such channel.

8. In such case the court could not permit the witnesses to divide the value, part for land, and part for whatever rights the owner might have in the river and sand bars, thus to increase the value of the tract.

*Rivers—Slackwater—Low-water mark—"Pool full."*

9. Where there is a slackwater the line of "pool full" is low-water mark.

Argued October 15, 1923. Appeal, No. 18, Oct. T., 1923, by plaintiffs, from judgment of C. P. Allegheny Co., Jan. T., 1919, No. 938, on verdict for plaintiffs, in case of Mary O'Hara Darlington, and Francis R. Harbison, executor of the estate of Edith Darlington Ammon, deceased, v. Pennsylvania Railroad Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from report of jury of view. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs for $378,500. Plaintiffs appealed.

*Errors assigned,* inter alia, were various rulings on evidence, recited in the opinion of the Supreme Court, quoting bills of exception, and refusal of plaintiffs' 8th point, quoting point and answer.

*John M. Freeman,* of *Watson & Freeman,* with him *Frank C. Osburn,* for appellant.—The court below clearly erred in excluding the testimony of E. K. Morse, an expert engineer, to show the suitability and advantages of the property for a furnace and rolling mill site: Whitcomb v. Phila., 264 Pa. 277; Marine Coal Co. v. R. R., 246 Pa. 478; Baker v. Detrich, 268 Pa. 76; Dawson v. Pittsburgh, 159 Pa. 317; Weinschenk v. R. R., 233 Pa. 442.

The court below further erred in excluding the testimony of E. K. Morse to the effect that it was practicable to dredge a channel from the Darlington property to the navigable part of the river, so as to give adequate facilities for navigation by water, and in refusing to permit the witness to further point out the advantages which this property had by reason of its riparian rights.

The court below likewise erred in excluding the testimony of plaintiffs' expert witnesses, Morse and McGrew, to the effect that a large area of at least ten acres of the river bed in front of the Darlington property, consisting of sand bars and flats, could be filled in and reclaimed.

By its instructions the court clearly left it to the jury to find whether or not the plaintiffs were entitled to any damages whatever for delay.

The severance of a property by a canal or railroad does not make it two properties for the purpose of assessing damages: Cameron v. R. R., 157 Pa. 617; Baker v. R. R., 236 Pa. 479; Ferguson v. R. R., 253 Pa. 581; Rudolph v. R. R., 186 Pa. 541, 548; Potts v. R. R., 119 Pa. 278; Gibson v. Bridge Co., 192 Pa. 55, 58.

Plaintiffs are entitled to an additional private crossing over or underneath the railroad, if the same be necessary for the uses of the property: Book v. R. R., 207 Pa. 138; Penna. Canal Co. v. R. R., 2 Pearson 354; Cameron v. R. R., 157 Pa. 617; Dubbs v. R. R., 148 Pa. 66.

Aside from the statutes of this state, we think the owner of a property, severed by a railroad or canal, would have a right of crossing to enable him to go from one part of his land to another by implication as a way of necessity: Mt. Pleasant Coal Co. v. R. R., 200 Pa. 434; Penna. R. R. v. Horn, 15 Pa. Dist. R. 613.

The owners of the Darlington property have a clear right, under the Lateral Railroad Act, ·to construct a railroad leading from the north side of their property across the tracks of the Pennsylvania railroad, in order to reach the Allegheny River: Hays v. Risher, 32 Pa. 169; Clifton Heights Boro. v. Mfg. Co., 220 Pa. 585.

*Thomas Patterson,* of *Patterson, Crawford & Miller,* and *R. P. Marshall,* for appellee.—The testimony of E. K. Morse was properly rejected: Harris v. R. R., 141 Pa. 242; Schuylkill, etc., R. R. v. Stocker, 128 Pa. 233; Kindred v. Phila., 239 Pa. 329.

Exclusion of offers to show that the river bottom could be dredged and the property made available for river traffic, was proper: McKeesport Gas Co. v. Steel Co., 189 Pa. 509; McGunnegle v. R. R., 213 Pa. 383.

Testimony with respect to filling in the river bed beyond the harbor line was inadmissible.

Two properties separated by any natural or artificial barrier can be treated as one for the purposes of condemnation only when they are so inseparably connected in the use for which they are applied as that the injury of the one must necessarily and permanently injure the other: Rudolph v. R. R., 186 Pa. 541; Potts v. R. R., 119 Pa. 278; Western Penna. R. R. Co.'s App., 99 Pa. 155; Penna. Canal Co. v. Ry. 203 Pa. 282.

The argument that the public highway is a substitute for the farm crossing and makes the two properties one for any purpose for which the highway can be used, is, without merit.

The Lateral Railroad Act of 1832 has no application.

The title of the Pennsylvania Canal was a fee simple, to which the Pennsylvania Railroad succeeded.

No harm could be done plaintiffs when the question of interest was submitted to the jury in the exact words which were used in the opinion of this court: Penna. Co. for Ins. on Lives, etc., v. Phila., 268 Pa. 559; Pattison v. Ry., 268 Pa. 555.

OPINION BY MR. JUSTICE KEPHART, January 7, 1924:

Appellee appropriated certain lands of appellants situated between Aspinwall and Sharpsburg, along the Allegheny River. The tract condemned contained approximately twenty-six acres, measured from "pool full"; it included all riparian and other rights of plaintiffs extending into the Allegheny River, and was part of a larger tract containing 239 acres, 175 acres of which were very hilly. Many years ago the Pennsylvania Canal was. built through the level part; the property of the canal has long since been purchased by the railroad and owned in fee: Foust v. Dreutlein, 237 Pa. 108.

The land was being used for residential and farming purposes. The jury found the entire property had been damaged $378,500 by the loss of the twenty-six acres. The verdict was sustained by the court below, and judgment thereon is now appealed by the owners, charging trial errors.

The complaint is chiefly of the court's refusal to admit testimony as to the suitability and advantages of the entire property for a furnace and rolling mill site. The admissibility of the evidence depended on a consideration of the exact status of the land and what was proposed to be shown. The property was used in its entirety for residential and farming purposes. It was divided

from east to west along the river by appellee's fee right-of-way, a strip of land some eighty feet in width, and access from one piece to the other over the railroad was by means of a public highway.

Where land lying on either side of a highway, canal or railroad is used, held, occupied and cultivated in its entirety as a farm, and a part on one side is appropriated, the owner may recover as damages compensation for the injury or depreciation in value to the entire farm: Cameron v. P. & L. E. R. R., 157 Pa. 617; Baker v. P. R. R. Co., 236 Pa. 479; Cox v. Pa. Co., 263 Pa. 132. This follows the reasoning of Justice CLARK in Potts v. Pa. S. V. R. R. Co., 119 Pa. 278. Where two pieces of land have no physical connection, to be regarded as one they must be inseparably connected in the use to which they are applied so that injury or destruction of one must necessarily and permanently affect the other.

In all eminent domain cases where land in one ownership is divided by highways, the theory of entirety is predicated solely on its present use as a whole, and depreciated value has reference to that use. Some exceptions have been made where there exists under the surface deposits of coal, ore and like minerals, and the combination to be complete must exist as a whole. These have reference to physical elements existing as part of the soil. It is not intended to embrace lands so divided, where new, independent and suitable uses of a problematic character are attempted to be fastened to the land separate and apart from its present use, and thus enhance the value. In such cases, which after all are more or less speculative, the use to which the land is intended to be put must meet conditions as they exist on the ground. As a farm the land was used as an entirety; as a site for a manufacturing plant, to be built in the future, it must be considered as two tracts separated by a fee ownership. As a farm, communication between the several parts was permissible under the law. As a manufacturing site, the inter-mill traffic necessary to

make the pieces contiguous would not be permitted over defendant's railroad without its consent. That a highway connects the two tracts would not change the rule just stated. When an owner claims damages for best possible use, if it is to be allowed, he must have it presently in his power to make the use available; if the use depends on the affirmative action of others or the courts, the land cannot be said to be presently useful for that purpose. We are dealing in a future possible use, which may never occur; not in a fixed, determined use.

As indicated, the Lateral Railroad Act would not aid; it could not be used for the purpose of inter-mill service without an abuse of the act. But even if it were possible, it does not determine the question of what the owner could do at the time of condemnation. The court below was right in excluding the evidence.

The offer to show the river bottom could be dredged and the property taken made available for river traffic, is subject to the same objection. It enters too much into the realm of speculation as to probable developments. The plan offered shows the harbor line marked "pool full" line; this marks the limit of plaintiff's property: McKeesport Gas Co. v. Carnegie Steel Co., 189 Pa. 509; McGunnegle v. P. & L. E. R. R. Co., 213 Pa. 383. Appellant would have no right to enter the property of others to dig any such channel. The court properly instructed the jury the property line for the purposes of this case was low-water mark as established by the line called "pool full."

The condemnation proceeding included all the land between the railroad and the river (twenty-six acres) with whatever rights plaintiff might have in and to land adjoining the Allegheny River. The depreciated value of this tract as a whole, as herein indicated, should be shown; the court could not and did not permit the witness to divide the value, part for land and part for whatever rights appellants might have in the river and sand bars, thus to increase the value of the tract. Whatever

these rights may have been or were likely to be, they were covered by the bond; proper elements to be considered in fixing the value of the twenty-six acres as a manufacturing site, or of the entire acreage as a farm. If the line was later moved out by the railroad company through negotiations with others, and filled in, appellants were deprived of nothing they were not compensated for in full.

The exception with regard to interest is not well taken. Appellants submitted a point correctly stating the law, which was affirmed by the court. The jury understood it thoroughly. Appellants draw too sharp a line on the words "you find," and "damages." No jury of fair intelligence could have been misled by the charge as to interest. In view of the fact that the court proceeded on an erroneous theory as to damages to the entire tract as a manufacturing site, we are not prepared to say the verdict was inadequate.

Judgment affirmed, at the cost of appellants.