Elgart, Appellant, *v.* Philadelphia.

Argued November 21, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Morris Wolf,* with him *Blanc, Steinberg, Balder & Steinbrook,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Jacob J. Siegal,* Deputy City Solicitor, with him *David Berger,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE COHEN, March 24, 1959:

On November 21, 1945, by duly recorded deed, Jean Elgart conveyed premises at 4213 Chester Avenue, Philadelphia to her husband-appellant as trustee. The premises has a frontage of 49 feet on Chester Avenue and a depth of approximately 200 feet northward. This lot was improved with a three-story house converted into apartments. Six years later, on September 20, 1951, by duly recorded deed, Samuel Elgart, as trustee, acquired the adjoining lot to the west, containing a frontage of 139 feet on Chester Avenue with a depth of approximately 200 feet northward. These two conveyances invested the trustee with ownership to the northeast corner of Chester Avenue and 43rd Street, having 188 feet on Chester Avenue and a depth of 200 feet northward along 43rd Street. The entire property was classified "C" residential but, after the passage of a 1952 zoning ordinance, it was classified "F" residental, thereby opening the ground to new uses. In 1956, an ordinance was passed establishing a Health Center whereby the City "took" the last acquired corner property, *i.e.*, 139 feet on Chester Avenue by 200 feet northward for the purposes of its erection.

In the eminent domain proceeding which followed, the lower court did not permit the introduction of testimony relating the damages caused by the City's taking of the corner lot to the remaining premises owned by the appellant, but did allow, over objection of appellant, the introduction of testimony of the original cost of the corner lot when it was purchased by him.

The appellant vainly sought to introduce testimony of expert real estate appraisers to establish severance damages because of the taking of the corner tract. He contends that he should have been permitted to recover not only for the value of the premises taken, but also

for the loss in value of the adjacent property which was not taken. In order to establish this element of severance damages he sought to introduce evidence of the fair market value of the entire tract (the value before the taking) and then the value of the remainder of the plot containing 49 feet on Chester Avenue after the taking. However, the court below, guided by *Gibson v. Fifth Avenue and High Street Bridge Co.*, 192 Pa. 55, 43 Atl. 339 (1899), determined that since the plaintiff did not establish that there was a "unity of use" between the two contiguous properties he was not entitled to recover severance damages and thereupon excluded the testimony of the value of the entire tract before the taking and the value of the remainder of the tract after the taking.

In the *Gibson* case a woman owned property abutting on the street, which was being elevated to accommodate a bridge approach. Previous to this improvement, she had purchased rear properties which abutted on side streets and were contiguous to her original holding. Her attempt to recover damages for the alleged loss to the rear adjacent properties was precluded because the court concluded that her intent was to deal with the rear adjoining properties as independent and distinct parcels. In making its determination that there must be a "unity of use" applicable to contiguous properties, as well as non-contiguous properties, the court reached its conclusion without any previous decisional authority for its action. An analysis of the cases, however, which have been decided by this Court, on the question of severance damages, casts serious doubt on the propriety of the decision made in the *Gibson* case.

From a review of those cases, one can readily conclude that where properties are separated by artificial, *Cameron v. Pittsburgh and Lake Erie Railroad Co.*,

157 Pa. 617, 27 Atl. 668 (1893) (Pennsylvania Canal); natural, *Rudolph v. Pennsylvania Schuylkill Valley Railroad Co.*, 186 Pa. 541, 40 Atl. 1083 (1898) (stream); *Kossler v. Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co.*, 208 Pa. 50, 57 Atl. 66 (1904) (stream); or intervening land interests of another, *E. C. Potts et al. v. Pennsylvania Schuylkill Valley Railroad Co.*, 119 Pa. 278, 13 Atl. 291 (1888); cf. *Penna. Co. for Ins. on Lives & Granting Annuities, Trustee v. Penna. Schuylkill Valley Railroad Co.*, 151 Pa. 334, 25 Atl. 107 (1892), thereby rendering them non-contiguous, unless it be convincingly demonstrated that the properties displayed a singleness of purpose, severance damages were not a proper item in computing the compensation due for the taking. Nowhere in these cases do we find the concept of "unity of use" applied to contiguous properties except in the *Gibson* case.

In addition, the latest pronouncement of the rule of the above cases was *Morris v. Commonwealth*, 367 Pa. 410, 80 A. 2d 762 (1951), where Mr. Justice CHIDSEY clearly stated at page 414: "The important element governing the basis of determination of damages where *non-contiguous* tracts are involved, in addition to the proximity of location, is the entirety of use of the separate tracts: North Shore Railroad Company v. Pennsylvania Company, 251 Pa. 445, 96 A. 990; Darlington v. Pennsylvania R.R. Co., 278 Pa. 307, 123 A. 284." (Emphasis supplied).

All of the cases decided before and after *Gibson* dealt with damages accruing to non-contiguous tracts. We feel that the "unity of use" doctrine should be limited to situations involving non-contiguous land and not extend to contiguous tracts. One does not have to be an expert in real estate appraisals or an expert in land value economics to recognize that, generally, whenever two continguous and independently owned parcels

are acquired by a single owner, the valuation of the combined properties may produce a value greater than the sum of the values of the individual parts. Even where there are no actual physical improvements an increment of value (plottage value) arises as a consequence of combining two or more sites, thereby developing a single site having a greater value than the aggregate of each when separately considered. There is a recognized economic advantage in larger real estate holdings. Substantial sums are paid by developers for the acquisition of larger plots of land because the advantage of continguous lots is always reflected by a larger square foot value. Moreover, in the instant case, appellant sought and obtained the passage of a zoning ordinance which re-zoned both separately acquired but contiguous lots, thereby increasing the building area from 50% to 90%. This increment of value should not have been denied the appellant; it was an element of damages which should have been admitted by the court below so that it might be considered by the jury.

In view of our conclusion that severance damages was a proper item for recovery, we have no difficulty in deciding that the admissibility, as on cross-examination, of the purchase price paid for one of the tracts was error. In *Berkley v. Jeannette*, 373 Pa. 376, 96 A. 2d 118 (1953), we held that an owner can be asked on cross-examination, regardless of whether he testified as to the value of the property on direct examination, the price he paid for the property, with a limitation however, that the purchase price will not be too remote so as to lack any relevant evidentiary value. However, where, as here, we are dealing with the damages recoverable from a *common tract*, though separately acquired more than four and a half years before, any testimony as to the price paid for the individual tracts

was irrelevant, thereby tending to confuse and lead the jury into collateral matters. What was said in the *Berkley* case, at page 381 by Mr. Chief Justice [then Justice] JONES is particularly appropriate here: "What the defendant's counsel sought to elicit on cross-examination of the husband-plaintiff was not what the plaintiffs had paid for the property as an *integrated whole,* but what they had paid for each of the tracts separately and at different times. The two sums added together would not have given a figure by which the witness's opinion of the value of the properties as a whole at the time of the condemnation could have been impeached. It is not only possible, but probable, that each of the constituent lots took on an increased value upon its being merged with the other which was forthwith to be reflected in the value of the properties as a whole." (Emphasis supplied).

Judgment reversed and new trial granted.