## Duquesne Light Company, Appellant, *v.* Board of Property Assessment, Appeals and Review, Appellant.

Argued March 21, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*John F. Murphy,* Assistant County Solicitor, with him *Francis A. Barry,* First Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for County of Allegheny.

*Frank W. Ittel,* with him *A. Sieber Hollinger,* and *Reed, Smith, Shaw & McClay,* for property owner.

OPINION BY MR. JUSTICE COHEN, September 25, 1962:

These appeals involve the 1960 triennial assessment of property known as Brunots Island, situate in the Ohio River within the limits of the City of Pittsburgh.

The island which is owned in its entirety by appellant-appellee, Duquesne Light Company (Duquesne) comprises an area of approximately 156 acres. Part of the land, about 75.5 acres, is used for public utility purposes and is exempt from taxation. The remainder, comprising approximately 80.5 acres, is used for the storage of coal and ashes and is subject to taxation.

Under the authority of the Act of 1939, June 21, P. L. 626, 72 P.S. §§5452.1-5452.20, appellant-appellee, Board of Property Assessment, Appeals and Review of the County of Allegheny, Pennsylvania (Board), assessed the entire island property at $10,460,125. Of this amount, $9,934,685 was exempt property. The above figures include a total assessment of the *land* area of the island of $1,018,760, of which exempt portion was assessed at $493,320, and the taxable acreage at $525,440. The taxable portion of the land of the island had been assessed at the previous triennial at $305,000.

Duquesne filed two appeals in the Court of Common Pleas of Allegheny County. One was from the assessment of the total exempt property valued at $9,934,-685, which represents the assessed value of the personalty and realty located on the exempt tract. This appeal was discontinued when the case came to trial.

The second appeal, the one in issue herein, was from the increase in the assessment of the taxable land from $305,000 to $525,440, an increase of approximately seventy-two per cent.

The lower court concluded that the assessment of $525,440 was excessive and entered an order reducing the assessment to $340,000. Both Board and Duquesne appealed, the former contending that the reduction of the assessment was error, and the latter alleging that the record did not justify a valuation of the property in excess of $240,000. The validity of the lower court's conclusion is now before us.

The lower court erred in making its determination.

Since Duquesne was not required to pay taxes on the tax exempt land, it was deemed unnecessary by the parties and by the court to consider, for purposes of this action, the propriety of the total assessment of the land on the island. The court below, therefore, permitted the case involving the tax exempt property to be marked "Settled and Discontinued" and treated the reasonableness of the assessment figure of the non-tax-exempt land to be the only matter in issue. This was error.

The proper procedure for the court below would have been to assess the land of the entire island as a unit. From the assessment and valuation thus made, there should have been deducted the assessed value of the land for which Duquesne is entitled to exemption from taxation under existing law by reason of its use for public utility purposes. The difference of the two figures is the assessed value of the total land subject to taxation.

The reason for this procedure is a matter of logic. As we recently stated in *Elgart v. Philadelphia*, 395 Pa. 343, 346, 347, 149 A. 2d 641 (1959), "[o]ne does not have to be an expert in real estate appraisals or an expert in land value economics to recognize that, gen-

erally, whenever two contiguous and independently owned parcels are acquired by a single owner, the valuation of the combined properties may produce a value greater than the sum of the values of the individual parts. Even where there are no actual physical improvements an increment of value (plottage value) arises as a consequence of combining two or more sites, thereby developing a single site having a greater value than the aggregate of each when separately considered." It is, of course, recognized by the court that in some instances the value of the whole is less than that of its parts.

In the instant situation, it requires little imagination to appreciate that the value of the exempt land on the island is enhanced by the presence of the taxable area, and vice versa. To treat each as a distinct entity for assessment purposes is to deal in a fiction. The court must consider the assessed value of the total land and then deduct the assessed amount of the tax exempt area.

Accordingly, we vacate the order of the lower court and remand the record for proceedings in conformance with this opinion.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent. I would assess the taxable property as a unit and not as a mere part of a very large tract of real estate which is non-taxable.